FRANK H. DEWEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   March 3, 1914.— May 22, 1914.

, Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Negligence*, Street railway, In subway.

If a man at a station in a subway enters the space between two seats of an open street railway car, justifiably thinking that there is a place to sit down there but finding none, and, being ordered by the conductor after the car has started to get out of the space and to go to a seat in the rear of the car, obeys by getting on the running board to go back, noticing that there is room for him in the space between the car and the wall of the subway and not knowing that immediately ahead this space will be narrowed by the tracks being laid near the wall, and if, as the car moves, his shoulder comes in contact with the wall and he is thrown beneath the car and injured, these facts in an action for his injuries are evidence of due care on his part.

A conductor of a street railway corporation upon an open street railway car, passing through a subway on his regular route, must be taken to know that at a certain place in the subway the space between the car and the wall of the subway will be narrowed by the tracks being laid near the wall, and if, just as the car is approaching this part of the subway, he seeks to enforce a reasonable rule of the company forbidding passengers to stand between the seats by ordering a passenger so standing to get out of the space and go to a seat at the rear of the car, and thereupon the passenger, being ignorant of the construction of the subway, steps upon the running board to obey the conductor's order and, as the car moves on, comes in contact with the wall of the subway and is injured, these facts, in an action by the passenger for his injuries, are evidence of negligence on the part of the conductor.

TORT for personal injuries sustained on May 27, 1912, from being thrown from an open street railway car of the defendant in the subway leading to the junction of Pleasant Street and Tremont Street in Boston. Writ dated June 13, 1912.

In the Superior Court the case was tried before *Aiken*, C. J. The plaintiff entered the subway at the Boylston Street station and paid his fare on his entrance, intending to take a car bound through the subway to Tremont Street for the South End. He met in the subway station one Mrs. Bullard with whom he was acquainted. A car came from Park Street, being an open bulkhead car with twelve seats, ten of which were between the bulkheads. It was bound south through the subway to Tremont

Street. It stopped to let off and receive passengers at the Boylston Street station near the place where the plaintiff was standing. The plaintiff testified substantially as follows: "Two ladies got off the car from one of the middle seats and that, apparently, left two seats. Mrs. Bullard preceded me on to the car. Then, I supposed there were two seats there and she was in front of me. When I got on the car I found there was a little child there. No one else except Mrs. Bullard got on ahead of me. I got fully upon the car and was standing when I first noticed the child and by the time I noticed the child the car had started. I asked the woman if I could hold the little child, but she said, 'No.' I stood there as the car went along. After the car had gone some little distance the conductor came up beside my seat and said to me, 'You can't stand there. You must move,' in a sharp and decisive tone of voice. I didn't move at that time. The car, at this time the conductor spoke to me, had gone some considerable distance from the Boylston Street platform. The car continued to go along and the conductor came around the second time and said to me, 'You must move. You can't stand there any longer.' I asked him, 'What shall I do? Can't I stand here until we get out of the subway?' He said, 'No, come on. Get out of there. Get out now,' and kind of motioned to me. 'There is room behind, room in the rear.' His voice was sharp and decisive and I didn't hardly know what he was going to do. Then I started to get out. The conductor, when he spoke, stood beside my seat. I knew there was a rule about standing there, but I got caught in there and couldn't do any differently. I stepped upon the running board, took hold of the post with my left hand, and stepped squarely with both feet upon the running board. My feet did not slip off the running board nor did I fall in getting out from the car on to the running board. At the time I stepped from the body of the car to the running board there was an open space at the side of the car. I saw this open space before stepping down from the body of the car to the running board and knew that it was there so that I could get on to the running board. I stepped down facing frontways away from the seat and got both feet down. I was facing toward the rear of the car and was just getting ready to go, having a firm grip upon the post with my left hand, and, after having got into this position, I turned

to my left, that is, toward the rear of the car, in order to reach in and get my instrument case, which was being held for me by Mrs. Bullard. There was not more than a brief second while I stood upon the running board before I was hit upon my right shoulder and knocked from the car. I didn't know what it was that hit me. I went so quickly that I didn't have time to realize what it was. I noticed nothing unusual in the speed of the car. I didn't notice any particular swaying of the car at that time. Upon being knocked from the car I landed upon my back. I was just hurled off and landed upon my back."

Other material facts which could have been found upon the evidence are stated in the opinion.

At the close of the evidence the defendant asked for twenty-seven rulings. The Chief Justice refused to rule that on all the evidence the plaintiff could not recover and also refused to make the other rulings asked for by the defendant except as they were embodied in his charge. In the early part of his charge were the following instructions:

"So you start on the inquiry of liability with no responsibility on the part of the railway for the manner or form of construction. There is no claim of blame in that respect, and there is none. It is the claim that the conductor of the car was at fault, and that to his fault this accident is attributable.

"Before we come to that, I am going to take up the conduct of the plaintiff in this case. If he got on to the car, knowing that there was a rule that passengers shouldn't stand, and it was his purpose to disregard that rule, he cannot recover in this case. I do not know that that is contended, but I give you that as a proposition.

"If, with the intention of getting a seat, he boarded the car and it turned out that the space into which he stepped was pre-occupied so that he couldn't get a seat, then, gentlemen of the jury, he is not precluded from recovering in this case, if he was in the exercise of due care and the conductor was at fault."

Near the end of the charge were the following instructions:

"At the outset of my charge to you on liability, I laid down two propositions. I will give them to you in another form, and you will take the propositions as I read them to you, rather than my statement earlier, as they are given with more precision in writing.

"The conductor, I say to you, was acting lawfully in calling

the attention of the plaintiff to the rule in regard to the standing of passengers, and in notifying the plaintiff that he was not allowed to stand between the seats of an open car, provided he did that in a proper manner.

"If the plaintiff, knowing of the said rule, or after he was notified not to stand between the seats, persisted in so doing, then he cannot recover while himself violating that rule, if such violation contributed to his injury.

"If the plaintiff boarded the car intending to take a seat which he reasonably believed was vacant, the fact that there was no seat and that he stood between the seats in violation of a rule of the company would not prevent his recovery in this action, if at the time of the accident he was exercising due care, and the defendant or its conductor or motorman was negligent."

At the end of the charge the Chief Justice instructed the jury as follows:

"The standard of care, gentlemen of the jury, that I gave you that you would apply to the conductor was that he was bound to use the utmost care to provide against any injuries or mishaps that human foresight could anticipate or foresee. I give you the same proposition in another form.

"The plaintiff was a passenger upon the defendant's car, and the defendant and its conductor were bound to exercise the highest degree of care consistent with the operation of the defendant's business, to protect him from danger or injury. I will give you the latest utterance of the court on the subject that I have in mind: 'The highest degree of care means simply that the carrier is bound to use the utmost care consistent with the nature of his undertaking, and with a due regard for all other matters that ought to be considered in conducting the business.'

"The conductor was bound to know the construction of the subway, and of any other incident to the order or command which he gave the plaintiff, and if there were dangers known to him or which he ought to have known, it was his duty to warn the plaintiff of those dangers."

The jury returned a verdict for the plaintiff in the sum of $9,000; and the defendant alleged exceptions to the refusal of eighteen rulings requested by the defendant, to certain rulings given at the request of the plaintiff, to so much of the charge

as related to the degree of care called for on the part of the con-
ductor, and "to so much of the charge as said in substance that
the intention of the plaintiff to disregard the rule was necessary
in order to show violation of the rule."

*F. Ranney,* (*T. Allen, Jr.,* with him,) for the defendant.

*W. H. Hitchcock,* for the plaintiff.

SHELDON, J.  We have no doubt that the jury could find that
the plaintiff was in the exercise of due care.  There was evidence
that when he entered the space between the seats he expected to
find there room to sit down; and the jury could find that he was
not negligent in so expecting.  He left that place and went upon
the running board in obedience to an order from the conductor,
and it could be found that this was not negligent conduct.  He
saw here between the car and the wall of the subway room enough
for him to stand and move in safety.  It was, as the jury could
find, in obedience to the conductor's notice that there was room
for him in the rear that he turned and started in that direction.
He did not know, as could be found, that the open space was
narrowed just ahead of the car by the track's coming in close
proximity to the wall.  He well might suppose that the con-
ductor would not in effect have directed him to go to the rear if
that could not be done with safety.

His injury did not occur while he was violating a known rule
of the company.  We have seen that the jury could find that he
had not intentionally violated the rule, and was not in fault for
what he had done.  His injury occurred after he had obeyed the
conductor's order and conformed to the rule.

We are of opinion also that there was evidence of negligence
on the part of the conductor, although that is a much closer ques-
tion.  It is true that the rule of the company forbidding passen-
gers to stand between the seats was a reasonable one; and the
judge so ruled.  But the circumstances of the particular case
as those circumstances were known to the conductor might ren-
der the immediate enforcement of that rule so dangerous to the
life or limb of a passenger as to make it a question for the jury
whether its temporary violation should be allowed.  No doubt
a passenger who took such a position in disregard and inten-
tional violation of the rule, not under the stress of any temporary
peril, but merely for some such reason as that he did not like to

stand upon the running board and did not choose to wait for a less crowded car, would assume all the risks of his position and perhaps would not have any of the rights of a passenger; but that is not the question here presented. The conductor must be taken to have known the construction of the subway; and if there were dangers which were or ought to have been known to him and of which the plaintiff was ignorant, to which the plaintiff would be exposed by coming upon the running board while passing through this part of the subway, it could be found to have been negligent for the conductor to require the plaintiff to take his place at once upon the running board without warning him of these dangers.

It could be found also that what was said by the conductor to the plaintiff was intended by the former and understood by the latter to be a notice to the plaintiff that he should go at once to the rear of the car. The distance between the car and the wall of the subway was sufficient at that point for the plaintiff to do so in safety. But that distance was not uniform; it was much diminished a little farther on. The jury could find that the conductor knew this and that the plaintiff did not know it. They could find that under these circumstances the conductor ought not to have given the direction, but to have warned the plaintiff to stand close to the body of the car until he could turn or move with safety.

The instructions on these questions were sufficiently full and accurate, and afford the defendant no ground of exception.

Taking together the whole of what was said to the jury as to the degree of care required of the defendant, we find no material error therein. Some of the sentences that have been singled out for criticism went too far, if taken by themselves; for example, the statement that the conductor "was bound to use the utmost care to provide against any injuries or mishaps that human foresight could anticipate or foresee." But the whole matter was amply explained, and brought into conformity with our decisions. *Gardner* v. *Boston Elevated Railway,* 204 Mass. 213. *Glennen* v. *Boston Elevated Railway,* 207 Mass. 497, 498. *Savageau* v. *Boston & Maine Railroad,* 210 Mass. 164, 168. *Donahoe* v. *Boston Elevated Railway,* 214 Mass. 70.

What we have said disposes of most of the exceptions that were

argued by the defendant.   As the case was left to the jury, we cannot see that there was any error in the refusal to give to them, in the language asked for, the specific requests made by the defendant, or in the rulings that were made.   Many of them were covered sufficiently by what was said; others were not applicable to the issues presented to the jury.   We find no material error in the trial.

*Exceptions overruled.*