EUGENE H. OUILLETTE *vs.* JOHN L. SHEERIN.

GEORGE E. OUILLETTE *vs.* SAME.

CLIFFORD JORDAN *vs.* SAME.

Middlesex.    November 4, 1936. — June 29, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Negligence,* Motor vehicle, In use of way, Violation of law, Imputed, Contributory. *Evidence,* Relevancy; Opinion: expert. *Practice, Civil,* Charge to jury. *Damages,* For tort.

That G. L. (Ter. Ed.) c. 90, § 7; St. 1933, c. 51, was violated by a motor truck being parked at night on a public way without the tail light being lighted was evidence of negligence of the owner.

Testimony by a plaintiff, that on a rainy night, with the windshield wiper operating and headlights which gave him a vision forward of one hundred sixty feet, he ran his automobile into an unlighted motor truck parked near the curb on a straight street, and that he did not see the truck until he was within five or ten feet of it, required a conclusion that negligence on his part contributed to cause the collision.

Mere reliance by a passenger in an automobile upon the operator so far as its operation was concerned did not as a matter of law require a finding of negligent surrender of all care to the driver, where there was evidence that he looked ahead and, so far as circumstances permitted, exercised care for his own safety but, the windshield in front of him not being clear, did not see a parked unlighted motor truck with which the operator negligently collided.

Justifiable determination by a trial judge that the conditions attending observations by a witness were similar to those attending observa-

tions by the plaintiff warranted the admission of the witness's testimony in corroboration of the plaintiff's testimony.

On the record, no error was shown in the refusal of a trial judge to amplify his charge by reciting testimony of the plaintiff on cross-examination after he had recited some of the plaintiff's testimony on direct examination.

In the charge by a trial judge, which included correct instructions as to the general rule respecting minimizing damages in an action for personal injuries, sentences were not prejudicial to the defendant which stated that there was no duty upon the plaintiff to lessen the amount of damages by submitting to a facial operation if there was a difference of opinion as to the advisability and probable result of such an operation as expressed in the testimony of two experts, one testifying for the plaintiff and one for the defendant.

In an action for personal injuries it was immaterial whether the plaintiff would be willing to submit to an operation performed by the defendant's expert, which the expert had previously testified was advisable.

THREE ACTIONS OF TORT. Writs in the first two actions in the Superior Court dated May 17, 1934, and that in the third action in the District Court of Lowell dated October 2, 1934.

Upon removal of the third action to the Superior Court, the actions were tried together before *Leary*, J. There were verdicts for the plaintiffs in the sums, respectively, of $225, $5,000, and $50. The defendant alleged exceptions.

*G. B. Rowell*, (*A. R. Berge* with him,) for the defendant.

*M. G. Rogers*, for the plaintiffs.

DONAHUE, J. The plaintiff Jordan was driving his automobile, on the front seat of which the plaintiff George E. Ouillette was riding, along Middlesex Street in Lowell, in the night time, when his automobile collided with the rear end of an unlighted automobile truck owned by the defendant and standing in front of his home.

Jordan now seeks to recover for damage to his automobile, having waived a claim for personal injuries. George E. Ouillette was a minor, and an action was brought on his behalf by a next friend to recover damages for personal injuries. His father brought an action to recover for consequential damages resulting from the son's injuries. The cases were tried together in the Superior Court and there was a verdict for the plaintiff in each case. Ex-

ceptions of the defendant to the refusal of the judge to direct verdicts for him, to the exclusion and admission of evidence, to the refusal to give certain requested rulings and to portions of the charge are here presented.

The bill of exceptions states that "There was sufficient evidence from which the jury might find that the truck owned by the defendant . . . was parked on Middlesex Street . . . without a tail light lighted as required by the statute" (G. L. [Ter. Ed.] c. 90, § 7; St. 1933, c. 51). The question of negligence of the defendant was therefore properly submitted to the jury. *Jacobs* v. *Moniz,* 288 Mass. 102, 104, and cases cited. The defendant contends that verdicts should have been directed in his favor on the ground that negligence of the plaintiffs Jordan and George E. Ouillette contributed to their damage and injury, the right of the other plaintiff to recover being dependent upon the right of his son George E. Ouillette to recover. *Regan* v. *Superb Theatre, Inc.* 220 Mass. 259, 261.

The plaintiff Jordan testified that prior to the collision he had been operating his automobile at the rate of twenty-five to thirty miles an hour. There were no vehicles coming from the opposite direction. He testified that "it was misting . . . it was not quite a rain." There was other testimony that it was then raining. The one windshield wiper with which the automobile was equipped was in front of the driver's seat where Jordan sat and was operating as his automobile came along Middlesex Street. There was nothing in the record indicating that it was not operating properly or that the rain or mist materially impaired his view through the portion of the windshield where the wiper operated. He and Ouillette were talking. He did not see the defendant's standing truck until his automobile was within five or six feet of it, as he testified on direct examination, or ten feet, as he said in cross-examination. Upon seeing the truck he immediately turned his automobile to the left and applied his brakes but was then unable to avoid the collision.

We think that from Jordan's own testimony it is a necessary conclusion that his lack of care contributed to causing

the collision.   His headlights were lighted.   They had been inspected two days before the accident.   He testified that by those lights he could see ahead "the distance which was required by law . . . one hundred sixty feet and that as he was coming along that road on that night he could see a distance of one hundred sixty feet ahead with the lights in the condition they were that night; that it was fair to say that he could see a pedestrian walking across the street or an automobile a distance of one hundred sixty feet ahead of him and that that was true all of the time he was travelling on Middlesex Street that night."   It is suggested by plaintiffs' counsel that the driver was mistaken as to the distance he could see ahead by the light of his headlights.   A witness called by the plaintiffs testified on cross-examination that the headlights were not white "like a new car" and did not "throw the light well," but he did not testify how far they did "throw the light." We find nothing in the record which diminishes the effect of Jordan's estimate as to the distance he in fact could see ahead on the night in question.

He came into Middlesex Street at a point which was five hundred seventy feet distant from the place where the defendant's truck was, and the street was straight between those two points.   He was operating his automobile within three feet of the curb at his right, and the defendant's truck was standing within two or three feet of the curb. On his testimony, when he was one hundred sixty feet from the truck his headlights must have made the truck in his path plainly visible.   He was looking straight ahead. Yet without changing course or speed he continued and did not see the truck until he was within five or ten feet of it. The conclusion is required that he looked carelessly.   *Stone v. Mullen*, 257 Mass. 344, 346.

The plaintiff George E. Ouillette was entitled to recover for negligence of the defendant even though negligence of Jordan also contributed to cause the collision, if Ouillette was not guilty of contributory negligence.   *Tevyaw v. Hemingway Brothers Interstate Trucking Co.* 284 Mass. 441, 442.   On the evidence it could not properly have been

ruled as matter of law that Ouillette negligently abandoned all care for his own safety or that his conduct with respect to looking out for his own safety was negligent.

There was evidence warranting the finding that because of rain on the portion of the windshield which he faced, he was able to see very little that was on the road directly in front of him. He was, however, looking ahead as the automobile approached the place of the accident. He did not see the unlighted truck of the defendant before the collision. On cross-examination he testified that he and Jordan were laughing and talking as the automobile proceeded along Middlesex Street, that he left the speed and the operation of the automobile to Jordan and that he made no objection to the manner in which the automobile was operated.

There was not much that one in his position could do for his own safety. See *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262, 264. The jury were warranted in finding that what little he could do in that respect he did, in looking ahead as the automobile went along the street. There was nothing in the circumstances appearing precedent to the collision which as matter of law made negligent his failure to complain of the manner in which the automobile was operated. Reliance on Jordan so far as the operation of the automobile was concerned would not as matter of law constitute a negligent surrender of all care if, as it could have been found, he continued to exercise such care as he could for his own safety. *Griffin* v. *Hustis*, 234 Mass. 95, 99. It could not have been ruled as matter of law that negligence on his part contributed in causing the collision, and a verdict for the defendant in his case could not rightly have been directed.

The defendant excepted to the testimony of a police officer to the effect that one half or three quarters of an hour after the plaintiffs' accident, he arrived at the scene in a police car, approaching from the same direction as Jordan's automobile had come; that it was raining; that in front of the place where he was sitting on the front seat there was no windshield wiper; that he was looking ahead; and that the first he saw of the defendant's truck was when

the police car was slowing down about twenty-five feet from the truck. The conditions under which the witness and the plaintiff Ouillette looked were alike in the respects that each was sitting behind a portion of a windshield where there was no wiper, at a time when it was raining, and that each approached the defendant's truck from the same direction. It did not appear that the headlights on the two automobiles were of the same strength or that the eyesight of the two persons was identical. But a preliminary determination by the judge in the exercise of his discretion, that the conditions on the two occasions less than an hour apart were sufficiently similar to justify the putting of the police officer's testimony before the jury, cannot be said to have been wrong. *Bemis* v. *Temple*, 162 Mass. 342. *Shea* v. *Glendale Elastic Fabrics Co.* 162 Mass. 463. *Edward Rose Co.* v. *Globe & Rutgers Fire Ins. Co.* 262 Mass. 469. See *Commonwealth* v. *Murphy*, 282 Mass. 593; *Guidara & Terenzio Inc.* v. *R. Guastavino Co.* 286 Mass. 502.

At the end of ample and accurate instructions to the jury as to the effect of a surrender of all care by a person riding in an automobile the judge said: "You have heard all the testimony on that point. You have heard the testimony of Mr. Ouillette with reference to this. You have heard his testimony on direct examination, and I think that he testified that he was looking ahead at the road as they were going along. It is for you to recall. Then he testified on cross-examination with reference to the degree of reliance placed upon the driver. Now that is an issue for you to decide. . . ." At the close of the charge counsel for the defendant stated that the judge had repeated testimony of Ouillette on direct examination as to looking ahead but had referred to his testimony on cross-examination only in a general way and that the defendant had the right to have his testimony on cross-examination recited by the judge. The judge did not amplify his charge and the defendant excepted.

The judge expressed or intimated no opinion as to the weight or effect of the testimony referred to in the charge or as to which party should prevail. He attempted no

analysis of the testimony. With adequate identification of the portion of the testimony of the witness on cross-examination which was pertinent to the issue under discussion, he specifically directed the jury to consider that testimony as well as the testimony given on direct examination. We think the judge was not required to recite in detail the testimony given on cross-examination and that his charge was fair, unbiased and not prejudicial to the defendant. *Whitney v. Wellesley & Boston Street Railway,* 197 Mass. 495, 502. *O'Brien* v. *Shea,* 208 Mass. 528, 533. *Sawyer* v. *Worcester Consolidated Street Railway,* 231 Mass. 215, 218. *Mahoney* v. *Gooch,* 246 Mass. 567, 571.

As a result of the accident there were at the time of the trial various scars on the face of Ouillette and he had a swollen lip which interfered with normal eating. A witness called by the defendant qualified as an expert in "plastic or oral" surgery and testified that the scars could be made "less conspicuous" or be "improved," and the condition of the lip remedied, by an operation at a cost of about $400. He further testified that such an operation was advisable, that he had performed "quite a number" of such operations successfully, that he could not "guarantee the operation one hundred per cent" but that "he believed it was reasonably probable the operation would be successful." A witness called by Ouillette, who qualified as an expert in surgery, testified that he doubted if it would be advisable to have an operation, that it might result in worse scarring or in sloughing and that he would hesitate very much to do anything in the line of plastic surgery.

The defendant concedes in his brief that the judge, in instructing the jury, correctly stated the general rule regarding the duty of Ouillette respecting an operation. At the close of the charge the defendant excepted to two of several sentences relating to the matter of an operation. These fragments of the charge must be considered with their context. *Cronin* v. *Boston Elevated Railway,* 233 Mass. 243, 246. *Draper* v. *Cotting,* 231 Mass. 51. *Partridge* v. *United Elastic Corp.* 288 Mass. 138, 145. The judge instructed the jury that there was an obligation on Ouillette

as a claimant for damages to use all reasonable efforts to effect a cure and so lessen the damages, and that he must use the care that a person of ordinary prudence would have exercised, in seeing that the amount of damages was cut down. He pointed out that the expert witnesses who had testified were in conflict on the question whether an operation would improve Ouillette's condition. Then followed the two sentences to which exception was taken: "Now if there is a difference of expert opinion as to the advisability and result of an operation there is no duty to submit to such an operation and it might be found that a failure to submit to it was not unreasonable. That is, if there is a real difference of opinion between experts as to whether or not the submission of one's self to an operation would result in an improvement of his condition, then there is no duty upon the plaintiff to submit."

The judge then went on to say at some length that if the condition of a person claiming damages would be improved by having an ordinary operation which a reasonably prudent man in the circumstances would submit to, a refusal would be evidence of an unreasonable failure to lessen the amount of damages, but that a person is not obliged to have a serious surgical operation when the outcome as to relief and the reduction of damages is uncertain; that such a person has the obligation to be reasonable with respect to having an operation and to exercise the care in effecting a cure and diminishing damages which a person of ordinary prudence would exercise in like circumstances. In the charge read as a whole there was no error in what was said with respect to Ouillette having an operation. *Floccher's Case,* 221 Mass. 54. *Snooks's Case,* 264 Mass. 92. *Sheppard's Case,* 287 Mass. 459. *Noyes* v. *Whiting,* 289 Mass. 270. *Birmingham Railway Light & Power Co.* v. *Anderson,* 163 Ala. 72. *Cero* v. *Oynesando,* 48 R. I. 316. For collection of cases see 11 Am. L. R. 230.

The two sentences to which exception was taken are not to be scrutinized and weighed as if they stood alone. When read with what was said just before and what was said immediately after, they were not prejudicial to the de-

fendant. *Lambeth Rope Co.* v. *Brigham,* 170 Mass. 518, 520. *Dewey* v. *Boston Elevated Railway,* 217 Mass. 599, 604. *Draper* v. *Cotting,* 231 Mass. 51, 63. *Cronin* v. *Boston Elevated Railway,* 233 Mass. 243, 246.

The basis of the defendant's objection to this portion of the charge, as stated at the time he took the exception, was that Ouillette's expert admitted that he was not a "cosmetic" surgeon and the defendant's expert testified that he was. The defendant now contends that the language of the two sentences was too broad and was prejudicial to the defendant because it contained no reference to the "reasonableness" of Ouillette taking the opinion of his own surgeon on the matter of having an operation as against the opinion of the defendant's surgeon. No request for a ruling as to this had been filed by the defendant. Apparently without objection from the defendant, when Ouillette's surgeon was called as a witness, the judge found that he possessed the necessary qualifications to testify as an expert on the issues in the case. That finding of the judge was conclusive in the absence of anything showing it to be erroneous as matter of law. *Lenehan* v. *Travers,* 288 Mass. 156, 159. He was not required on the objection of the defendant to the two sentences in the charge to make any distinction as to the qualifications of the two expert witnesses or as to the respective weight to be given to their divergent opinions.

During the cross-examination of Ouillette he was asked if he would be willing to have the defendant's expert, who had earlier testified, perform the operation which the expert had described and testified was advisable.* It was immaterial whether Ouillette would or would not consent to the defendant's expert performing such an operation. It has been said that "The test is not his willingness to submit to operation, but his right to guard life and limb from unreasonable peril." *Snooks's Case,* 264 Mass. 92, 93.

The exceptions in the cases where the Ouillettes are the

---

* The question was excluded and an exception was saved by the defendant. — REPORTER.

plaintiffs are overruled.   In the case in which Jordan is the plaintiff the exceptions are sustained and in that case judgment is to be entered for the defendant.

*So ordered.*