PETER LEVEILLEE & another, administrators, *vs.* RAYMOND
WRIGHT.

JOSEPH G. LAMOTTE *vs.* SAME.

Worcester.    March 9, 1938. — May 26, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, DOLAN, & COX, JJ.

*Negligence,* Violation of law, In use of way, Motor vehicle, Contributory,
Of bailee. *Motor Vehicle,* Parking. *Way,* Public: parking. *Proxi-
mate Cause. Bailment. Words,* "Parking."

An ordinance of a municipality prohibiting "parking" at any time on a
certain bridge properly was admitted in evidence at the trial of an
action for injuries received in a collision with a motor truck which,
after it had broken down, had been left unattended on the bridge
for over thirty hours, the question whether there was a parking in
violation of the ordinance being for the jury.
Evidence that a disabled motor truck was left unattended on a highway
bridge for over thirty hours in violation of a municipal ordinance and
with no lights at night in violation of G. L. (Ter. Ed.) c. 85, § 15;
c. 90, § 7, as amended, warranted findings of negligence of the operator
of the truck, and that such negligence was a proximate cause of injury
which occurred when an automobile ran into the truck in the night
time.
An action against the owner of a motor truck for causing the death of a
guest in an automobile which ran into the truck was not barred by
negligence of the operator of the automobile contributing to cause the
collision, if the evidence did not require a finding that the decedent
surrendered all care to the operator or was guilty of contributory
negligence.
The bailor of a motor vehicle may recover for damage to it caused by a
collision resulting from the concurrent negligence of the bailee and
the operator of a second vehicle, if the bailee at the time of the colli-
sion was not acting as the bailor's agent.

TWO ACTIONS OF TORT. Writ in the first action in the
Superior Court dated January 22, 1934; that in the second
action in the Central District Court of Worcester dated
February 23, 1934.

On removal of the second action to the Superior Court,
the two were tried together before *Broadhurst,* J. The record
included no requests for rulings. The judge denied motions
that verdicts be ordered for the defendant. There were

verdicts for the plaintiffs in the sums, respectively, of $5,422.50 and $750. The defendant alleged exceptions.

*J. J. MacCarthy*, for the defendant.

*H. H. Hartwell*, for the plaintiffs, administrators.

*C. E. Tupper*, for the plaintiff Joseph G. Lamotte, submitted a brief.

Cox, J. These are two actions of tort which were tried together to a jury. The cases are consolidated in a single bill of exceptions which is stated to contain all the evidence material to the issues raised. The first case is for the death of Delia Leveillee, a count for conscious suffering having been waived. The second case is brought by the owner to recover for damage to his automobile, in which the deceased was riding. The defendant in each case seasonably presented a motion for a directed verdict, both of which were denied subject to the defendant's exceptions. The jury returned a verdict for the plaintiff in each case. The accident occurred in Worcester.

Upon evidence most favorable to the plaintiffs, the jury could have found the following facts. On Friday, December 29, 1933, the defendant was operating his truck in a westerly direction on the main highway between Boston and Worcester. About five o'clock in the afternoon, as he was crossing the Lake Bridge over Lake Quinsigamond between Shrewsbury and Worcester, the bridge being a part of the main highway, his truck became disabled by reason of a broken axle. The defendant left his truck at the place on the bridge where it became disabled, and it remained there without lights of any kind until sometime after the accident, which occurred at about one thirty o'clock on Sunday morning, December 31. On Friday evening the defendant removed the load of meat from the truck and made some desultory but ineffectual efforts to have the truck removed from the bridge. On Saturday evening at about eleven o'clock, he went to the truck for the purpose of installing a new axle but gave up the attempt because of the cold, and left the truck in the same position in which it had been since Friday, and without any lights, although the lights were "working and there was nothing the matter with them."

On the evening of December 30, the plaintiff Lamotte lent his automobile to his grandson, Joseph S. W. Lamotte, hereinafter referred to as Lamotte, for the latter's own purposes and not on any business of the plaintiff Lamotte. Lamotte, together with one Adams, Hazel Yabsley, who has since married Lamotte, and the deceased, drove to a cottage on the shore of Lake Quinsigamond where they remained until about midnight. It was a very cold night. When they left the cottage, Lamotte turned on the heater in the automobile and the heat from it, together with the vapor from the breaths of the occupants, caused the windshield "to steam up." They drove to a "diner" in Shrewsbury, located about three hundred yards from the Shrewsbury end of the bridge, where they had something to eat, remaining there until about one twenty-five o'clock in the morning of December 31. When they left the "diner" to return to Worcester, the same conditions prevailed as to "steam from the heater and their breaths forming on the windshield," and immediately before the accident, which occurred at one thirty o'clock, the windshield was "fogged" on its inside. Lamotte was driving and Miss Yabsley was seated on his right. Adams was seated on the rear seat directly behind Lamotte, with the deceased on his right. The snow, which had fallen a day or so before, had been plowed toward the northerly sidewalk on the bridge, leaving a pile which extended four feet from the curb into the travelled way. The roadway, except for this snow bank, was fairly clear, although there were spots of ice on the "driving part" of the road. The defendant's truck was standing in a dark spot between two of the bridge lights and about thirty feet from the westerly or Worcester end of the bridge, which was nine hundred fourteen feet long, with the right side of the truck parallel to the pile of snow, four feet in width, and with its left side out to the northerly rail of the double car tracks which crossed the bridge. Its rear end was open, there were no lights and no reflector on it, and it stood in the same position where it had been left on Friday. There were twenty street lights on the bridge, ten on each side, spaced at varying distances, and all were

lighted at the time of the accident. Lamotte was driving at a speed of from twenty-five to thirty miles an hour, with the right side of his automobile about a foot from the bank of snow and the left side just inside or outside the car rail, when he saw the defendant's truck about twenty to twenty-five feet ahead of him but could not tell whether it was in motion or not. He turned his automobile sharply to the left in order to clear the truck. The front half did clear it but the rear skidded on some ice and came in contact with the rear corner of the truck. The back of the automobile was torn off, the deceased was thrown to the roadway and killed. Lamotte did not apply his brakes at any time before the collision but attempted to make a left swing in order to pass the truck. He testified that the lights of his automobile would show up objects in the road seventy-five feet ahead but because of the "steam" on the windshield he could not see ahead over twenty-five feet on the bridge, although if automobiles were approaching him he could see the lights. He also testified that he would not say that he was driving at a rate of speed faster than would have permitted him to stop his automobile in the distance he could see ahead, the distance referred to in the question asked him being twenty feet.

The only evidence in the record which relates in any way to the conduct of the deceased came from Adams, one of the occupants of the automobile, who testified that he was talking with her; that no one in the automobile at any time prior to the accident made any remonstrance to Lamotte as to the speed or manner in which the automobile was being operated; that he did not hear the deceased make any remonstrance and did not know that she did.

A question of evidence is presented by the defendant's exception to the admission in evidence of a copy of the traffic rules of the city of Worcester, certified to by the city clerk, which provided that there shall be no parking at any time on the Lake Bridge at the location where the accident occurred. As the defendant contends, there was no evidence introduced as to what constitutes parking within the meaning of the rule. Relying upon this fact and the absence of

any statutory definition of the word "parking," he argues that in view of the circumstances, which required him to leave his truck in the proscribed area, of the weather conditions and of his efforts to remove or repair the truck, there was no evidence to warrant the jury in finding that he had violated the rule. In *Opinion of the Justices*, 297 Mass. 559, 563–564, it was said: "The parking of automobiles has become a considerable problem in the regulation of traffic on highways. Ordinances and by-laws undertaking to govern parking have been widely adopted. Even before the common use of automobiles, ordinances limiting the time during which a vehicle could stop on the public way were adopted and enforced. . . . With respect to the parking of automobiles it has been held that 'No right of any citizen is impaired by an ordinance which prohibits the parking of vehicles . . . [in the circumstances described].' *Commonwealth* v. *Rice*, 261 Mass. 340 . . . Doubtless temporary and reasonable stops of automobiles in highways are lawful as an incident to travel." In the case of *Commonwealth* v. *Rice*, 261 Mass. 340, 345, decided in 1927, from which the above quotation in *Opinion of the Justices* is taken, the word "parking" did not appear in the ordinance which the defendant was found guilty of violating. The ordinance related to taxicab stands, the licensing of cab owners to occupy these stands and the general regulation of their use; and the words of the ordinance, to which the word "parking" as used in the opinion refers, are "to remain standing." See *Falk* v. *Finkelman*, 268 Mass. 524; *Milbury* v. *Turner Centre System*, 274 Mass. 358; *Commonwealth* v. *Ober*, 286 Mass. 25, 26, 32. The cases at bar do not call for a precise definition of the word "parking" so as to apply the meaning to all cases which may arise. See *Wonewoc* v. *Taubert*, 203 Wis. 73; *Martin* v. *Oregon Stages, Inc.* 129 Ore. 435; *Townsend* v. *Jaloff*, 124 Ore. 644; *Bowmaster* v. *Wm. H. DePree Co.* 252 Mich. 505; 108 Am. L. R. 1152. We think that whether an automobile standing in the highway is parked or not must be determined from all the circumstances including the reason why it is so standing. By "parking" is meant something more than a mere

temporary and reasonable stop for a necessary purpose, including a stop resulting from mechanical trouble. But the reasonableness of a temporary or involuntary stop, including the length of such a stop, must also depend upon the circumstances surrounding it. We think that in the cases at bar it could not have been ruled as matter of law that the ordinance had not been violated and that it was a question of fact for the jury to determine, under suitable instructions which we assume were given, whether the ordinance had been violated or not. The judge's charge is not printed in the bill of exceptions. The attested copy of the ordinance was admitted properly. G. L. (Ter. Ed.) c. 40, § 22; c. 233, § 75.

The defendant admitted that the lights on his truck were not lighted at the time of the accident. This condition of the truck was a violation of our statutes, G. L. (Ter. Ed.) c. 85, § 15, and c. 90, § 7, as amended, and such violation is evidence of negligence, as was the violation of the ordinance, if so found by the jury. *Lane* v. *Atlantic Works*, 111 Mass. 136, 137, 140. *Milbury* v. *Turner Centre System*, 274 Mass. 358, 361, and cases cited. *Baggs* v. *Hirschfield*, 293 Mass. 1, 4. But the defendant contends that these violations were merely conditions and not causes of the accident and that the judge should have so ruled.

Such evidence does not make out actionable negligence unless the violation or violations can be shown to have been actually a proximate cause contributing to the injury suffered. *Newcomb* v. *Boston Protective Department*, 146 Mass. 596. *Milbury* v. *Turner Centre System*, 274 Mass. 358, 361. "It has long been settled that where a vehicle is rightfully upon a public way, but is for the time being in a position thereon which is in violation of some ordinance or binding regulation, its presence in the forbidden spot is not commonly as matter of law a proximate cause of a collision. It may be only a circumstance and not a cause, and the question is generally one of fact. *Newcomb* v. *Boston Protective Department*, 146 Mass. 596, 604. *Falk* v. *Finkelman*, 268 Mass. 524. *Wall* v. *King*, 280 Mass. 577, and cases cited. Violation of law is regarded as a cause of

injury only where the unlawful or forbidden element in the conduct complained of, rather than that conduct viewed as a whole, is found to be the cause. *Chase* v. *New York Central & Hudson River Railroad,* 208 Mass. 137. *Berdos* v. *Tremont & Suffolk Mills,* 209 Mass. 489, 499. *Farr* v. *Whitney,* 260 Mass. 193." *Stowe* v. *Mason,* 289 Mass. 577, 583. Since the case of *McDonald* v. *Snelling,* 14 Allen, 290, this court has had many occasions to deal with the question whether an act which could be found to be a negligent one was a mere condition or a cause of injury to one not the actor. The citation of a few of the more recent cases is all that is necessary. In them the rule of law is laid down with abundant citations. See *Smith* v. *Locke Coal Co.* 265 Mass. 524; *Falk* v. *Finkelman,* 268 Mass. 524, 527; *Milbury* v. *Turner Centre System,* 274 Mass. 358; *Perry* v. *Stanfield,* 278 Mass. 563; *Wall* v. *King,* 280 Mass. 577; *Morrison* v. *Medaglia,* 287 Mass. 46; *Mair* v. *Whittemore Co.* 289 Mass. 261; *Stowe* v. *Mason,* 289 Mass. 577; *Wallace* v. *Ludwig,* 292 Mass. 251. In *Wallace* v. *Ludwig,* 292 Mass. 251, where there is a review of cases, it is said (page 255), "The result of these decisions is that the primary cause may be the proximate cause, provided it continues to be efficiently, actively, and potently operative, although successive subsidiary instrumentalities may coöperate to produce the final result." As was said in *Morrison* v. *Medaglia,* 287 Mass. 46, 49, "A causal connection may nevertheless be found, either on the theory of *Burke* v. *Hodge,* 217 Mass. 182, that the negligence of the earlier wrongdoer remained a dangerous force until the negligence of the later wrongdoer concurred and combined with it to cause injury, or on the theory of *Lane* v. *Atlantic Works,* 111 Mass. 136, restated in *Horan* v. *Watertown,* 217 Mass. 185, that the earlier wrongdoer ought to have foreseen that his negligence would be followed by negligence of another resulting in injury, and consequently that in law the act of that other is the act of the original wrongdoer because it is the natural and probable consequence of his own wrongdoing." We think that the jury could have found that a result of the defendant's negligence was to leave upon the highway, in violation of

law, an obstacle which constituted a danger to traffic, and that the defendant's wrong remained as a dangerous force which contributed to the injury. It was not necessary that the defendant should have foreseen the precise manner in which the accident might result. *Hill* v. *Winsor*, 118 Mass. 251, 259. *Perlman* v. *Burrows*, 270 Mass. 182, 184. *Morse* v. *Homer's Inc.* 295 Mass. 606, 610. *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 195. We think that it could have been found that in its general nature, what actually occurred was a probable consequence of the defendant's negligence, when all the attendant circumstances are considered, and that it was not something which was only remotely and slightly probable. The question of the defendant's negligence as a contributing cause of the injury was for the jury. See *Falk* v. *Finkelman*, 268 Mass. 524, 527; *Tevyaw* v. *Hemingway Brothers Interstate Trucking Co.* 284 Mass. 441; *Renaud* v. *New England Transportation Co.* 286 Mass. 39; *Jacobs* v. *Moniz*, 288 Mass. 102, 104; *Mair* v. *Whittemore Co.* 289 Mass. 261, 263; *Stowe* v. *Mason*, 289 Mass. 577, 583; *Ouillette* v. *Sheerin*, 297 Mass. 536; *Langill* v. *First National Stores Inc.* 298 Mass. 559, 562; *Baker* v. *Hemingway Brothers Interstate Trucking Co.* 299 Mass. 76, 79.

The defendant argues that the deceased was not in the exercise of due care, as matter of law. We do not think it could have been so ruled. Contributory negligence, if any, of the deceased was an affirmative defence and the burden of proving it rested upon the defendant. G. L. (Ter. Ed.) c. 231, § 85. *Horneman* v. *Brown*, 286 Mass. 65. All the facts bearing on the due care of the deceased were not presented by the evidence. *Mulroy* v. *Marinakis*, 271 Mass. 421, 423. As was said in *King* v. *Weitzman*, 267 Mass. 447, 449, "All the facts concerning the injury are not shown beyond peradventure. The record is silent as to the observation by the plaintiff's intestate." Death, it may be said, has prevented us from knowing what the deceased observed. See *Healey* v. *Boston Elevated Railway*, 235 Mass. 150, 152; *Linnane* v. *Millman*, 261 Mass. 491, 494. The cases are distinguishable from *Thorp* v.

*Boston Elevated Railway,* 259 Mass. 415, *Oppenheim* v. *Barkin,* 262 Mass. 281, *Laffey* v. *Mullen,* 275 Mass. 277, and *Curley* v. *Mahan,* 288 Mass. 369. The evidence did not show, as matter of law, that she negligently surrendered all care of herself to the caution of Lamotte. The question of the due care of the deceased was one for the jury. *Chadbourne* v. *Springfield Street Railway,* 199 Mass. 574. *Woolner* v. *Perry,* 265 Mass. 74, 77. *Gallup* v. *Lazott,* 271 Mass. 406, 409. *Tevyaw* v. *Hemingway Brothers Interstate Trucking Co.* 284 Mass. 441. *Renaud* v. *New England Transportation Co.* 286 Mass. 39. *Ouillette* v. *Sheerin,* 297 Mass. 536, 539–540. *Daugherty* v. *Pompeo Transporting Corp.* 62 Fed. (2d) 349.

The plaintiff administrators are entitled to recover for negligence of the defendant even though negligence of Lamotte, as to which, in the circumstances, we are not required to express an opinion, may also have contributed to the injury, if the deceased was not guilty of contributory negligence. *Ouillette* v. *Sheerin,* 297 Mass. 536, 539. It follows that there was no error in the first case and that the verdict for the plaintiffs cannot be disturbed.

In the second case, the defendant has presented no argument touching any questions except those relating to the admissibility in evidence of the traffic rule, the negligence of the defendant, and whether any such negligence was a cause or condition. We have already disposed of these questions. The jury could have found that the plaintiff Lamotte was the owner of the automobile involved, that he had lent it to Lamotte for the latter's own purposes, and that he was not present at the time of the injury. This warranted a finding that Lamotte was a bailee of the automobile and that in operating it he was not acting as the plaintiff's agent. The plaintiff, in these circumstances, is entitled to recover for damage to his automobile caused by the negligence of the defendant, even though the operator of the plaintiff's automobile may also have contributed negligently to that damage. *Gibbons* v. *Denoncourt,* 297 Mass. 448, 459.

*Exceptions overruled.*