EDWARD KRALIK *vs.* WILLIAM H. LeCLAIR
(and three companion cases [1]).

Bristol.    October 25, 1943. — December 29, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Proximate Cause. Negligence,* Violation of law, Motor vehicle, Use of way.

Violation by a defendant of a penal statute or of a valid ordinance, rule or regulation, while evidence of his negligence, does not constitute a ground of recovery unless it is a proximate cause of the damage for which recovery is sought.

Negligence of the operator of a tractor trailer in parking his vehicle partly on a travelled way in violation of regulations of the State department of public works could not properly be found to have been a proximate cause of injuries sustained by the operator of another tractor trailer, who, approaching around a curve from the rear, saw the parked vehicle when one hundred feet from it, and, although he could have stopped in fifty feet at the rate of speed he was driving, failed to do so and turned to the right off the way and lost control of his vehicle so that it collided with trees beside the way.

FOUR ACTIONS OF TORT.    Writs in the Third District Court of Bristol dated July 12, 1941.

On removal to the Superior Court, the actions were tried before *Walsh*, J.

*G. H. Young*, for the plaintiffs.

*S. Perman*, for the defendants.

Cox, J.    Verdicts under leave reserved were entered for each defendant and the cases were reported by the trial judge to this court, with a stipulation as to entry of judg-

---

[1] The companion cases are by the same plaintiff against Consolidated Motor Lines, Inc., and by Leslie O. Howard against each defendant.

ments for the plaintiffs in the amounts awarded by the jury, if there was error, otherwise that judgment was to be entered for the defendant in each case. The judge ruled, without objection, that the defendant corporation was engaged in the transportation of property in interstate commerce, and it was agreed that, on the morning of the accident, the defendant LeClair was "its employee engaged to operate the said motor vehicle."

The jury could have found the following facts: The accident occurred at about 11:30 in the morning of April 1, 1941, on one of our State highways. The weather was clear and the road was dry. The two cement lanes of the highway are twenty feet wide, and on either side there is a gravel shoulder. The accident occurred on a straightaway south of a gradual curve that bears to the right or west for south bound traffic, and the shoulder which is about three feet wide at this point is flanked by a growth of trees. LeClair, who was driving a tractor trailer to the south, stopped the equipment off the highway as far as he could go, to go to the "toilet," leaving the equipment unattended for from five to eight minutes. The plaintiff Kralik was also operating to the south a tractor trailer, forty-two feet long and eight feet wide. As he approached the curve he could see some of the road at all times but could not see around the "bend." As he got around the curve he saw the defendants' equipment one hundred two feet ahead with about two feet on the pavement, and another truck "pulling up alongside of" it from the opposite direction. He applied his brakes, got over on the shoulder, applied the brakes again "as the trailer started to slip," and tried to straighten it out before he reached the "woods." A tree knocked a door off the cab, knocked the cab off the chassis, and broke the air line releasing all air from the brakes, and the "three occupants" were thrown off the seat into varying positions inside and outside the cab.

Kralik testified that before he reached the curve the speed of his equipment was between thirty-five and forty miles an hour and that he had been travelling at that speed for several miles; that as he was proceeding around the

curve, he slowed down to twenty miles an hour; that his speed when he first saw the defendants' truck was twenty miles an hour; and that, under all the conditions existing at the time, at a speed of twenty miles an hour, he could stop in a distance of fifty feet.

Leslie O. Howard is a plaintiff. The only possible references to him in the record are that the jury returned a verdict for him, and that "Leslie Howard, called by the Plaintiff, substantially corroborated the testimony of Edward Kralik, and on cross examination testified that the brakes on the Kralik vehicle were applied for a distance of one hundred to one hundred and fifty feet." The parties have assumed that the Howard who testified was a plaintiff.

A witness, called by the defendants, testified that he had been following the Kralik equipment for five miles; that its speed averaged from twenty miles an hour on "up-grades" to thirty-five or forty at other times; that he had no way of knowing what its speed was as it was "rounding the further end of the curve"; that his (the witness's) speed was then "about fifteen miles an hour"; and that Kralik was travelling around the curve at a speed greater than twenty miles an hour.

The following regulations of the interstate commerce commission were in evidence: Section 2.01 provides, "Every motor carrier and his or its officers, agents, employees, and representatives, concerned with the transportation of persons or property by motor vehicle shall comply with the following regulations and shall become conversant therewith." Section 2.22 provides, "No motor vehicle shall be stopped, parked, or left standing, whether attended or unattended, upon the traveled portion of any highway outside of a business or residence district, when it is practicable to stop, park, or leave the motor vehicle off the traveled portion of such highway: When conditions make it impracticable to move the motor vehicle from the traveled portion of the highway, every effort shall be made to leave all possible width of the highway opposite such standing motor vehicle for the free passage of other vehicles, and care taken to provide a clear view of such stopped motor vehicle as

far as possible to the front and rear." The
and regulations of the department of public w
in evidence: "Section 1. Definitions. . . . (b)
that portion of a highway between the regularly-establishᴄ
curb lines or that part, exclusive of shoulders, improved and
intended to be used for vehicular traffic. . . . (g) 'Parking',
the standing of a vehicle, whether occupied or not other-
wise than temporarily, for the purpose of and while actu-
ally engaged in loading or unloading, or in obedience to an
officer or traffic signs or signals, or while making emergency
repairs, or, if disabled, while arrangements are being made
to move such vehicle."' "Section 14. Parking. No person
shall park a vehicle in any of the following places . . . (d)
Upon the roadway in a rural or sparsely settled district. . . .
(f) Upon any roadway where the parking of a vehicle will
not leave a clear and unobstructed lane at least twenty feet
wide for passing traffic." A penalty is provided for viola-
tion of the rules and regulations of the department (section
25). We assume that violation of the rules and regulations
of the department by LeClair could have been found.

The violation of a penal statute or of a valid ordinance,
rule or regulation is evidence of negligence as to all con-
sequences that were intended to be prevented. *Baggs* v.
*Hirschfield,* 293 Mass. 1, 2–3, and cases cited. *Follansbee* v.
*Ohse,* 293 Mass. 48, 52, and cases cited. *Leveillee* v. *Wright,*
300 Mass. 382, 385–387. Evidence of such violation, how-
ever, does not make out actionable negligence unless the
violation is shown to have been actually a proximate cause
contributing to the injury suffered. It may be only a cir-
cumstance and not a cause, and the question is generally
one of fact. *Leveillee* v. *Wright,* 300 Mass. 382, 387–389,
and cases cited. In *Wallace* v. *Ludwig,* 292 Mass. 251,
where there is a review of cases, it is said (page 255): "The
result of these decisions is that the primary cause may be
the proximate cause, provided it continues to be efficiently,
actively, and potently operative, although successive sub-
sidiary instrumentalities may coöperate to produce the final
result." But violation of such rules of conduct is regarded
as the cause of injury only where the unlawful or forbidden

element in the conduct complained of, rather than that conduct viewed as a whole, is found to be the cause. *Leveillee* v. *Wright*, 300 Mass. 382, 387–388, and cases cited. This last statement is based in part, at least, upon what was said by Knowlton, C.J., in *Chase* v. *New York Central & Hudson River Railroad*, 208 Mass. 137, 157–158, to the effect that, in determining whether an unlawful act is a direct and proximate cause of an injury, the tendency of the decisions in many other States is toward the establishment of the doctrine that, if there is an unlawful element in an act, which in a broad sense may be said to make the act unlawful, this will not preclude recovery "unless the unlawful element or quality of the act contributed to the injury, so that, if the act of a plaintiff may be considered apart from a certain unlawful quality that may enter into it, and if so considered there is nothing in it to preclude recovery, the existence of the unlawful quality is of no consequence unless in some way it had a tendency to cause the injury." "A causal connection may nevertheless be found, either on the theory . . . that the negligence of the earlier wrongdoer remained a dangerous force until the negligence of the later wrongdoer concurred and combined with it to cause injury, or on the theory . . . that the earlier wrongdoer ought to have foreseen that his negligence would be followed by negligence of another resulting in injury, and consequently that in law the act of that other is the act of the original wrongdoer because it is the natural and probable consequence of his wrongdoing." *Morrison* v. *Medaglia*, 287 Mass. 46, 49–50.

In the light of these governing principles we are of opinion that, upon the permissible findings in the cases at bar and also upon the evidence by which the plaintiffs are bound, the act of the defendant LeClair in leaving the truck where he did was a condition or circumstance and not a cause of the plaintiffs' injuries. Reference has already been made to the state of the record in so far as it relates to the plaintiff Howard. We assume that he was riding in the Kralik equipment. He "substantially corroborated the testimony" of Kralik. It is not contended that he does not stand or fall upon that testimony, except in so far as his due care is con-

cerned. Just why, if "Leslie Howard" was, in fact, the plaintiff Leslie O. Howard, he should be "called by the Plaintiff" does not appear.

The accident occurred at 11:30 in the morning of a clear day and the road was dry. Kralik saw the standing truck when he was one hundred two feet from it. He was travelling around the curve where his view of road traffic was obstructed, at a rate of speed that was in violation of G. L. (Ter. Ed.) c. 90, § 17. As far as appears, the length of his equipment brought it within the prohibitive provisions of G. L. (Ter. Ed.) c. 90, § 19, in the form appearing in St. 1936, c. 388. He could have stopped within a distance of fifty feet, when travelling, as he said he was, at a speed of twenty miles an hour. He applied his brakes, got over on the shoulder which was rough and at a different elevation from the surface of the highway, and applied the brakes again as the trailer started to slip, and he tried to "straighten it out" as he reached the woods. His tractor did not come in contact with the defendants' truck but his trailer did. Photographs which were in evidence show scraping marks on the left side of the Kralik trailer beginning at a point about one third of its length from the front corner and also a broken piece of strap iron. The damage to the tractor was caused by coming in contact with trees which were knocked over. In the circumstances, it cannot be said that the standing truck continued to be "efficiently, actively, and potently operative" (see *Wallace* v. *Ludwig*, 292 Mass. 251, 255) as a cause of the plaintiffs' injuries. LeClair, as a reasonable man, was not required to foresee that what happened would happen. He was not bound to anticipate and provide against what is unusual and not likely to happen, or what, as is sometimes said, is only remotely and slightly probable. *Falk* v. *Finkelman*, 268 Mass. 524, 527. See *Conrey* v. *Abramson*, 294 Mass. 431, 433; *Gagnon* v. *Di-Vittorio*, 310 Mass. 475. The occupation of the road by the defendants' equipment, in the circumstances, was a condition and not a contributing cause of the injuries. *Falk* v. *Finkelman*, 268 Mass. 524. *Foschia* v. *First National Stores, Inc.* 290 Mass. 90, 92. *Mulvaney* v. *Worcester*, 293 Mass.

32, 34. *Kelly* v. *Hathaway Bakeries, Inc.* 312 Mass. 297, 299. See *Wall* v. *King*, 280 Mass. 577, 581; *Burke* v. *Durland*, 312 Mass. 291.

We have not overlooked the evidence that, as Kralik got around the curve, he saw another trailer tractor coming in the opposite direction and "pulling up alongside of" the defendants' equipment.

The cases at bar are distinguishable from such cases as *Milbury* v. *Turner Centre System*, 274 Mass. 358, 362–363, *Renaud* v. *New England Transportation Co.* 286 Mass. 39, 45, and *Leveillee* v. *Wright*, 300 Mass. 382, 388–389.

In accordance with the stipulation judgment is to be entered for the defendant in each case.

*So ordered.*