*Municipal Court of the City of Boston*

No. 359599

**MORRIS GURVITZ**

v.

**THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD.**

(September 24, 1954)

*Gillen, J.* This is an action of contract in which the plaintiff seeks to recover for the alleged theft of merchandise from within his automobile pursuant to the terms of a "Transportation Policy" issued by the defendant to the plaintiff.

*The evidence tended to show* that on December 20, 1952 the plaintiff, an installment peddlar, left his automobile on the public way outside of 76 Euston Road in Brighton while he made a delivery of merchandise at that address, and that the motor was turned off and the doors and windows were all closed and locked. When he returned within ten minutes the doors of the automobile were unlocked, the vent window on the left front door was open, the left

front door itself was open, and the merchandise covered by the policy had been removed from within the automobile after he had left it to make his delivery.

Later the plaintiff noticed that the handle-lock to the left front window vent was missing and the rubber molding on the left front window vent was displaced, causing difficulty in closing the said window vent completely. There were no scratches or dents on the inside or outside of the automobile at or near the left front window vent. The missing handle-lock was not thereafter located within the automobile or at the site of the alleged theft, but it was attached to the vent window when the plaintiff locked the doors before leaving the car to call upon his customer at 76 Euston Road, Brighton.

The defendant offered expert testimony to the effect that the type of handle-lock by which the left front window vent was equipped could not have been forced from outside of the automobile without breaking the glass in the window vent. The expert testified that when he examined the motor vehicle after the alleged theft and before any change had been made on the left front window vent, the frame was not bent or misshapen, the glass was not broken, and there were no scratches or dents inside or outside of the vehicle at the place where the left front window vent is located. He testified that the handle-lock to the left front window vent was then missing and that the left front window vent could be fully closed although not locked.

The plaintiff and the customer on whom he was calling at the time of the alleged theft testified that the rubber molding at the site of the window vent appeared displaced when they viewed it after the alleged theft. A second witness of the plaintiff testified that when he took photographs of the plaintiff's vehicle on March 1, 1953, the rubber molding appeared to him to be out of place when he viewed it from the inside of the vehicle. This witness testified further that he observed no marks on the outside of

the car nor on the vent frame. He testified further that on March 1, 1953 he was unable to close the vent window completely because of the rubber molding being displaced. He testified further that the window vent frame was not bent in any way whatever.

The policy is part of the evidence as are three photographs of the automobile, two of which are closeups of the front end of the car with a view of the ventilator window inside and outside.

The policy contained the following provisions: "In consideration of premium charged, this policy is extended to cover holdup, and theft from assured's vehicle. However, it is understood and agreed that this policy only covers such loss from a *fully enclosed body,* the doors and windows of which shall have been securely locked and the loss be a direct result of *violent forcible entry* of which there shall be visible evidence.

"It is understood and agreed that this policy excludes any loss to the property covered hereunder occasioned by theft from vehicles while parked *during the night* on any street, highway or in any parking lot."

It was agreed by the parties that the alleged theft occurred while the policy was in effect. It was further agreed by the parties that on the day of the alleged theft it became dark at 4:13 p.m., the time of sunset.

At the conclusion of the evidence the defendant filed certain requests. The two following are the only ones in issue:

1. The plaintiff is barred from recovery because the alleged theft occurred from a vehicle while parked *during the night* on a street or highway.

3. The plaintiff is barred from recovery because there was no visible evidence that the said loss was a direct result of a *violent forcible entry* into the plaintiff's vehicle.

The trial judge denied both of these requests with the notation "—inapplicable to the facts found."

The trial judge found for the plaintiff and made the following findings of fact:

"I find that the plaintiff's loss occurred as the result of an unknown person forcing open the ventilator window in the left front door of his car and removing the merchandise therefrom. I find that the plaintiff did not breach any of the conditions and terms of the policy by parking his car on the *evening* of December 20, 1952 for the purpose of delivering merchandise to a customer.

I rule that the provision in the policy excluding liability if a loss should occur while the assured's car is "parked *during the night* on a street or highway" contemplates a permanent parking not a mere stopping of a car to make deliveries as in the present case.

I rule that the defendant's policy recognizes that its assured's business is one in which deliveries from door to door were to be made, and that the vehicle from which such deliveries were to be made, would stop intermittently in front of its destination and that the time of such stopping would extend beyond sundown in the regular course of his business.

I rule that the plaintiff was not prohibited by the terms of the policy from making such deliveries and stopping temporarily as he did on the 20th day of December, 1952.

I find that a sworn proof of loss was made on the 24th day of February, 1953 and received by the company on the 25th day of February, 1953, which was in compliance with the provisions for giving notice contained in the policy.

I find also that such sworn proof of loss, even if not seasonably filed, was waived by the defendant since it denied liability by its letter of January 14, 1953, Exhibit No. 3.

I find on the credible evidence that the amount of merchandise set forth in Exhibit No. 5 was in the plaintiff's automobile on the evening of December 20, 1952; and that same was removed therefrom by some unknown person, forcing open the ventilator window of the left front door."

The defendant claims to be aggrieved by the trial judge's denial of requests 1 and 3.

The trial judge filed a lengthy and complete narrative setting forth how he arrived at the plaintiff's finding.

It is well established that the general finding of the trial judge imports the drawing of all rational inferences of which the case is susceptible and the finding of all necessary subsidiary facts and that finding will not be reversed if upon any view it can be sustained. *Standard Oil Co. of N.Y. v. Malaguti,* 269 Mass. 128.

It is agreed that the larceny took place during the night; therefore no question is raised on that phase of request for ruling No. 1. We then come to the next phase of this request: was the vehicle parked?

In *Leveillee v. Wright,* 300 Mass. 382, at page 386, the court said: "We think that whether an automobile standing in the highway is parked or not must be determined from all the circumstances including the reason why it is so standing. By 'parking' is meant something more than a mere temporary and reasonable stop for a necessary purpose including a stop resulting from mechanical trouble. But the reasonableness of a temporary or involuntary stop including the length of such a stop must also depend on the circumstances surrounding it."

In the instant case no Traffic Rules and Regulations of the City of Boston defining the words "parked" or "parking" were introduced in evidence, and the trial judge found that the stopping of the vehicle was not such a stopping as to amount to a parking as contemplated by the policy. We do not think that there was error in the treatment of request for ruling No. 1. All the circumstances in the case warranted the conclusion of the trial judge.

The only other complaint the defendant has is the treatment of request for ruling No. 3. There was evidence that the plaintiff, an installment peddlar, left his automobile on the public way outside of 76 Euston Road, Brighton, while he was making a de-

livery at that address; that the doors and windows of the automobile were all closed and locked; that when he returned within ten minutes the doors of the automobile were unlocked, the vent window on the left front door was open as was the left front door; that the merchandise covered by the policy had been removed from within the automobile after he had left it to make the delivery; that the handle lock was attached to the vent window when the plaintiff locked the doors before leaving the car to call on his customer at 76 Euston Road, Brighton, but the handle lock was missing thereafter and not located inside the automobile or at the site of the alleged theft.

All this evidence surely presents a picture of "visible evidence that the loss was a direct result of a violent forcible entry into the plaintiff's vehicle."

The exclusion clause relative to forcible entry in the instant case is entirely different from the exclusion clause in *Shulkin v. Travelers Indemnity Co.,* 267 Mass. 160, stressed by the defendant. There the plaintiff had to show "visible marks made upon the premises at the place of such entry by tools, explosives, electricity or chemicals" before he could recover.

In *Shattuck & Jones, Inc. v. Travelers Indemnity Company,* 323 Mass. 146 at 147, the court said: "We assume that the ordinary manipulating of the bolt to open the rear door satisfied the requirement of 'actual force and violence' ".

The requirements of the instant case on the phase of "force" are entirely different from the requirements in *Shulkin v. Travelers Indemnity Co.,* 267 Mass. 160. We hold that the plaintiff met the requirements in the instant case and the trial judge was correct in the conclusion he reached. We find no error.

*Report Dismissed.*

Lillian S. Gurvitz, for the plaintiff.
Parker, Coulter, Daley & White, for the defendant.