WILLIAM A. McGAFFEE *vs.* P. B. MUTRIE MOTOR
TRANSPORTATION, INC.

P. B. MUTRIE MOTOR TRANSPORTATION, INC. *vs.*
WILLIAM A. McGAFFEE.

Suffolk.    May 12, 13, 1941. — June 24, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Negligence*, Motor vehicle, Use of way, Contributory.

Evidence of the circumstances in which an automobile, proceeding
slowly on a rainy, misty night with its operator on the alert and its
lights on and its windshield wiper working, collided in a thick fog
bank with a large truck which, in the process of being turned around,
was stopped across the highway, blocking nearly the whole width of
the traffic lane used by the automobile, and which could have been
found not to have had its lights lit, warranted a finding of negligence
on the part of the operator of the truck and did not require a finding
of negligence on the part of the operator of the automobile.
A ruling that a position of a motor vehicle across and partially blocking
a highway while being turned around was rightful and did not con-
stitute negligence could not properly have been given without the
qualification that the right to have it in that position must be exer-
cised with due regard to the rights and safety of other travellers.

TWO ACTIONS OF TORT.    Writ in the first case in the
Superior Court dated January 22, 1934; writ in the second
case in the Municipal Court of the City of Boston dated
January 2, 1935.

Upon removal of the second case to the Superior Court,
the actions were tried together before *Donahue*, J.

*E. Martin & S. Cohen*, for P. B. Mutrie Motor Trans-
portation, Inc.

*J. M. Russell, (M. E. Mooney* with him,) *& W. F. Hayes*,
Assistant Attorney General, for McGaffee.

DONAHUE, J.    An automobile operated by William A.
McGaffee and owned by the Commonwealth, and an oil
truck owned by P. B. Mutrie Motor Transportation, Inc.
(hereinafter referred to as the Mutrie company), and oper-
ated by its employee, George F. Harrington, were in col-

lision on a State highway, known as Route 28, in the town of Bridgewater, at about 1:15 A.M. on a morning in January. Thereafter McGaffee brought an action against the Mutrie company to recover damages for personal injuries received by him in the collision, and the Mutrie company brought an action against McGaffee to recover for damage to its truck. The cases were tried together before a jury in the Superior Court. The jury returned a verdict of $10,000 in the case in which McGaffee was plaintiff, and also returned a verdict for him in the case in which he was named as defendant. Before the verdict in the latter case was recorded, the judge instructed the jury to retire and determine the amount of damage done to the truck. The jury found and reported such damage to be $1,000. After the return of the verdicts and before the recording thereof the judge reserved leave, with the assent of the jury, to enter verdicts for the Mutrie company if the Superior Court, or this court, should decide that such verdicts should have been entered. G. L. (Ter. Ed.) c. 231, § 120. The cases are presented to this court by a consolidated bill of exceptions, which states that it contains all the evidence necessary to this court's final determination of the issues.

The driver of the truck, Harrington, had delivered a load of oil that night in the town of Halifax, and started on his homeward journey to Fall River by way of Bridgewater Square. He drove through the square and was proceeding in a southerly direction on a State highway, known as Route 28, and was about three fourths of a mile beyond the residential section of the town, when he realized that he had taken the wrong road out of the square. He stopped the truck with its right hand wheels on a dirt shoulder at the west of the road. The road was straight and level for a considerable distance to the north and to the south. It was divided into three lanes, each ten feet in width. The two outside lanes were made of concrete and the middle lane was "a black road with a rough top." The truck was a large ten wheel "tanker," thirty feet long, and having a capacity of ten tons. It was equipped with two headlights,

one red tail light and two green lights on each side of the truck.

Harrington testified that after stopping the truck he got out to see if the ground west of the surfaced road "would hold the truck"; that there was an open area, twenty or twenty-two feet in depth, between the westerly edge of the surfaced road and an embankment; that "then he decided to turn around" and go back to Bridgewater Square; that he backed the truck four or five feet to the north, then "drove ahead across the road" to the east "making a left turn" and then backed the truck to the west and stopped it when its rear was at the embankment. There was evidence to the effect that the front of the truck then extended over nine feet of the ten-foot width of the westerly lane of the surfaced road. The truck was in that position at the time of the collision. The only persons present at the time of the collision and for a period of fifteen minutes thereafter were Harrington and McGaffee.

Harrington testified that when he stopped backing the truck and was about to shift the gears from "reverse" to "first" speed, preparatory to crossing the road once more, all the lights of the truck "were on" and the headlights "faced more towards the direction of Bridgewater"; that he looked to the north and saw the headlights of the automobile operated by McGaffee approaching at a distance of six or seven hundred feet, at a rate of speed of forty to forty-five miles an hour; that he sounded the horn on the truck, but the automobile, without slowing down or turning to right or left, continued on and struck the front left corner of the truck, and that there was in the vicinity only a "light fog" and mist. The jury was not obliged to believe the whole or any part of this testimony of Harrington. *Lydon* v. *Boston Elevated Railway*, 309 Mass. 205, 206. *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491, 493. There was evidence to the effect that a few hours after the collision Harrington said in the presence of witnesses that he was not on the truck at the time of the collision; that he had left the truck and had gone behind it to see its position; that he did not see the automobile oper-

ated by McGaffee approaching and saw nothing and heard nothing until the collision occurred. The judge instructed the jury that this testimony was not received as evidence of the manner in which the collision happened, but that, if believed, it was admissible to contradict the testimony given by Harrington. *Perrott* v. *Leahy*, 302 Mass. 318, 322. *Hoxie* v. *Hall*, 297 Mass. 80, 81, 82. *Robinson* v. *Old Colony Street Railway*, 189 Mass. 594, 596.

Testimony of McGaffee is here summarized. He left Boston between 11 and 11:15 P.M. and at 1:15 A.M. reached the place of the collision, having gone a distance of thirty to thirty-five miles. On his journey, which was mainly by Route 28, it rained constantly. There were fog banks at various places on the road and at other places the road was clear of fog. He made a detour around Bridgewater Square and came back to Route 28 at a point three fourths of a mile north of the place of collision. The road when he returned to Route 28 was fairly free of fog and he saw ahead of him, at a distance of two or three hundred feet, a red light, which he took to be the rear light of a motor vehicle travelling ahead of him. After a minute he lost sight of the red light by reason of a fog bank on the road. He drove through this and the road was then clear of fog for a while and he then encountered another fog bank. He was driving in the right hand, that is, the westerly, lane and kept close to the edge of the lane where he would be out of the way of any northbound traffic. The headlights of the automobile were lighted and were in good condition, the windshield wiper was working properly and the brakes were in good condition. On observing this fog bank he did what he had done on meeting fog banks earlier on his journey: he applied the brakes to check the speed of the automobile, and leaned over the wheel as far as he could, to get a clear view of the road ahead through the part of the windshield which was kept clear by the windshield wiper. He had in mind that somewhere ahead of him on the road was a motor vehicle whose red light he had earlier seen. On first entering the fog bank he could see the road thirty or forty feet ahead of him by means of the head-

lights. He was then going no faster than twenty miles an hour and at that rate of speed could stop the automobile within the distance of thirty feet. Suddenly the fog bank became denser and he could see only ten or twelve feet ahead. Though he was looking ahead, he saw no lights of any vehicle ahead of him. When the fog became denser he applied the brakes, there was a crash and he became unconscious.

1. There was evidence which, if believed, warranted a finding that Harrington was negligent.

On realizing that he had taken the wrong road, he stopped the truck which had been proceeding at the rate of speed of twenty-five to thirty miles an hour, within a distance of one to two hundred feet. The place chosen by Harrington for turning the thirty-foot truck around and the manner adopted by him in such turning involved blocking, in whole or in part for a considerable time, the westerly lane of the road. This was the lane where, it would naturally be expected, motor vehicles going south would be driven. When Harrington first stopped the truck it was partly on that lane. When he drove the truck across that lane, it apparently was wholly blocked. When he backed the truck to the west as far as it could go, it blocked all but one foot of the westerly ten-foot lane and the process of turning the truck was still incomplete. All this the jury was warranted in finding was done by Harrington behind a curtain of rain and mist and thick fog between the truck and any southbound vehicle approaching the locus on the westerly lane of the surfaced road.

The only evidence that the lights on the truck were lighted at the time of the collision was the testimony of Harrington. The jury was not obliged to believe his testimony. It could have been found on the testimony of McGaffee that he was looking intently ahead up to the instant of the collision and that he saw no such lights. The jury was warranted in finding that if the lights of the truck were then lighted McGaffee would have seen them. *Mercier* v. *Union Street Railway*, 234 Mass. 85, 88, and cases cited. *Hough* v. *Boston Elevated Railway*, 262 Mass. 91, 94. *Byrne* v. *Dunn*, 296 Mass. 184, 187.

The quantity of care which Harrington was bound to furnish was care "commensurate with the probable harmful consequence that might reasonably be expected to result from the lack of such care." *Avery* v. *R. E. Guerin Trucking Co. Inc.* 304 Mass. 500, 505, 506. *Brennan* v. *Ocean View Amusement Co.* 289 Mass. 587, 592. It could not properly have been ruled as matter of law that Harrington was not negligent. The jury had warrant for finding that the weather conditions prevailing and the consequent lack of visibility were such that Harrington's dealing with the truck as he did was negligent. *Cutler* v. *Johansson*, 306 Mass. 466. *Price* v. *Pearson*, 301 Mass. 260. *Langill* v. *First National Stores Inc.* 298 Mass. 559. *Renaud* v. *New England Transportation Co.* 286 Mass. 39.

2. There was no error in the refusal of the judge to rule as matter of law that McGaffee was negligent.

Just prior to the collision he was operating an automobile, which was in good mechanical condition, at an early hour of the morning, "out in the country," on a State highway with which he was familiar, where there were no intersecting streets for a distance of over three quarters of a mile. More care was required of him than if these were the only circumstances to be considered in determining whether his conduct was negligent. The presence of rain, mist and fog on the highway called for greater care on his part in the operation of the automobile than if such a condition did not exist. The evidence warranted a finding that he furnished such additional care to the extent that it could not rightly be ruled as matter of law that he was negligent.

Before entering the fog bank where the collision occurred, McGaffee diminished the rate of speed of the automobile to something over fifteen miles, and not over twenty miles, an hour, at which speed he could stop the vehicle within the distance of thirty feet. While in the fog bank he kept one foot on the brake pedal, and his eyes fastened on the portion of the road ahead that he could see by the light of the headlights for a distance of thirty or forty feet. He had in mind that he should watch out for the rear red lights of

the motor vehicle he had seen ahead of him two or three minutes before. Suddenly the distance he could see ahead of him was shortened to ten or twelve feet by what appeared to be a denser fog. No lights on a vehicle ahead could be seen. He put on the brakes and then came the collision.

The rate of speed at which McGaffee operated the automobile, and the manner of its operation while in the fog bank, could not as matter of law be said to be improper in view of such conditions on the highway as he reasonably should have anticipated. *Langill* v. *First National Stores Inc.* 298 Mass. 559, 562. *Jacobs* v. *Moniz*, 288 Mass. 102, 106. He was "bound to anticipate and provide against what usually happens and what is likely to happen," but he was not bound to anticipate and provide "against what is unusual and unlikely to happen." *Falk* v. *Finkelman*, 268 Mass. 524, 527. *Leveillee* v. *Wright*, 300 Mass. 382, 389, and cases cited. In the circumstances appearing it cannot be said as matter of law that McGaffee should have anticipated that an unlighted truck blocked the westerly lane of the road.

3. The Mutrie company filed, in each case, a motion for a directed verdict in its favor, which motions were denied. Considering, as we must in passing on such motions, the evidence most favorable to McGaffee and all inferences in his favor that are warranted by the evidence, we cannot say that the denial of the motions was error. *Karjavainen* v. *Buswell*, 289 Mass. 419. *Gechijian* v. *Richmond Ins. Co.* 305 Mass. 132, 136.

The Mutrie company excepted to the refusal of the judge to give, in the case in which it was plaintiff, the request that "As a matter of law" the Mutrie company's "truck had a right to be where it was at the time of the accident and, therefore, the location of . . . [its] truck at the time of the collision does not constitute negligence." The request could not have been given without qualification. The right of the Mutrie company to have its truck where it was at the time of the collision was subject to the limitation that the right be exercised with due regard to the rights and safety of other travellers on the highway. *Smith* v. *Import*

*Drug Co.* 253 Mass. 368, 371.  *McTighe* v. *Union Freight Railroad,* 274 Mass. 312, 314.  *Avery* v. *R. E. Guerin Trucking Co. Inc.* 304 Mass. 500, 505–506.  Other requests, to the effect that as matter of law on the testimony of McGaffee he was negligent, and that there was no evidence of negligence on the part of Harrington, were rightly denied.

The exceptions of the Mutrie company in both cases are overruled.

*So ordered.*