ADONIS P. EDWARDS *vs.* EDWARD J. WARWICK
(and a companion case [1]).

Worcester. · December 8, 1944. — February 1, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & SPALDING, JJ.

*Negligence,* Contributory, Motor vehicle, Use of way, Causing death. *Proximate Cause.*

A finding of contributory negligence on the part of a plaintiff, operator of an automobile, was not required as matter of law on conflicting evidence from which it could have been found that as the plaintiff was travelling westerly in darkness and mist with his headlights lighted, a dark colored, unlighted automobile operated by the defendant entered the highway from a roadside restaurant located off the south side thereof, proceeded across the highway and struck the plaintiff's automobile, and that the plaintiff did not see the defendant's automobile until it was but a few feet away, when he was unable to prevent the collision.

[1] The companion case is by Adonis P. Edwards as executor of the will of Margaret Edwards against the same defendant.

Evidence, that an elderly woman died of angina pectoris, "the culmination of" a preëxisting "arteriosclerotic heart condition," about ten months after she had suffered a fractured zygoma in an automobile accident, that her general health deteriorated markedly after the accident and that her death was "hastened prematurely by the accident" through acceleration of the heart condition, warranted a finding that the accident was a proximate cause of her death, although there was no evidence to show how much earlier death occurred than it would have, but for the accident.

Two ACTIONS OF TORT. Writs in the Central District Court of Worcester dated November 17, 1941, and October 5, 1942, respectively.

Upon removal to the Superior Court, the actions were tried before *Donnelly*, J. There were verdicts for the plaintiffs. The defendant alleged exceptions.

*B. C. Tashjian*, for the defendant.

*C. W. Proctor*, for the plaintiffs.

QUA, J. The first of these actions, in the order in which both parties have dealt with them, is to recover for injury to the plaintiff's automobile and for medical and hospital expenses incurred in behalf of the plaintiff's wife, all as the result of a collision between an automobile owned and driven by the plaintiff and an automobile driven by the defendant in Oxford on November 15, 1941. The second action is for the death of the plaintiff's testatrix, who was his mother, alleged to have resulted from the same accident. In each action there was a verdict for the plaintiff.

The accident happened on "the Worcester-Oxford highway," which was straight, level, and between thirty and forty feet in width. It was dark and "kind of misty," and "the place of the accident was dark." The plaintiff was driving in a westerly direction toward Oxford. His wife and mother were riding with him. The defendant, who had been travelling in the same direction, had stopped to eat at a roadside restaurant located off the southerly side of the highway, and was returning to the way to resume his journey when the collision occurred.

The only issues argued by the defendant are whether, in the first action, the plaintiff was guilty of contributory negligence as a matter of law, and whether, in the second

action, there was any evidence that the death of the plaintiff's testatrix was caused by the accident. We confine ourselves to these issues.

1. The plaintiff testified that about fifty feet from the point of contact he had "gone through a green light" and had then increased his speed to about twenty-five miles an hour; that he first observed the defendant's automobile, which was "dark in color" and "was then travelling without lights," when his own headlights shone on the defendant's hood and fender; that the defendant's automobile was then between nine and ten feet away to the plaintiff's left; that it was "moving straight across the highway"; that the plaintiff "hollered," applied his brakes, and turned to his right; that it was too late to do anything because the defendant was too close; that the right front of the defendant's automobile struck the left front of the plaintiff's automobile; that the defendant "came right across and kind of hit the plaintiff's car on the side," causing the latter to be pushed "some distance"; that when the plaintiff first saw the defendant's automobile, its rear end was "in the middle of the road — across the road"; and that "the defendant was at a right angle with the road." The defendant testified that before entering the highway he noticed that the traffic signal at his right was "red for west bound traffic"; that he observed the headlights of an automobile about two hundred fifty feet away at his right; that when he stopped at the restaurant his headlights had not been turned on because it was not then dark, but that they were on when he reëntered the highway; and that by the time of the collision he had "straightened his car out so that he was nearly parallel with the center of the road."

It seems plain that upon conflicting evidence the jury could find that the accident was caused solely by the defendant's driving his dark colored automobile in darkness and mist without lights from the restaurant across the road in front of and too near to the oncoming automobile of the plaintiff, the lights of which were in plain sight, and that the judge could not rule as matter of law that negligence of the plaintiff was a contributing cause. The failure of the plain-

tiff to see the defendant's automobile sooner than he did could be referred to its position at one side and at a right angle, as the plaintiff testified, to the plaintiff's course, to the lack of visibility, and to the defendant's headlights not being lighted. The plaintiff would not naturally expect an unlighted vehicle to come upon him from his side across the roadway so near to him as to interfere with his continued regular progress. The burden of proving the plaintiff's contributory negligence was upon the defendant. The circumstances of the case are very different from those in *Stone* v. *Mullen,* 257 Mass. 344, cited by the defendant, or in *Ouillette* v. *Sheerin,* 297 Mass. 536. They bring the case within the class of such cases as *Jacobs* v. *Moniz,* 288 Mass. 102, *Langill* v. *First National Stores Inc.* 298 Mass. 559, *Baker* v. *Hemingway Brothers Interstate Trucking Co.* 299 Mass. 76, *Price* v. *Pearson,* 301 Mass. 260, 263–264, *Cutler* v. *Johansson,* 306 Mass. 466, 469–470, *Gaines* v. *Ratnowsky,* 311 Mass. 254, 258, and *McGaffee* v. *P. B. Mutrie Motor Transportation, Inc.* 311 Mass. 730, 736.

2. The evidence tending to show that the death of Margaret Edwards resulted from the accident was in substance this: She suffered a fractured zygoma, and was discharged from the hospital "improved" after three weeks. Before the accident she had been "sickly" but able to care for herself, "get around all right," and go to church. Before the accident she had lived alone. Her condition was "pretty good." She used to go twelve miles every week to play "beano." After the accident her condition was bad. It seemed "she could not breathe right." She never went farther than her son's house next door and then had to be carried. She had to be helped from room to room. She could not take care of herself after the accident, and was cared for until her death. She never got better. There was other evidence, however, that before the accident she had been sick for two or three years, eleven months of that time in bed; that she suffered from "gallbladder stones," and "a cardiovascular condition," had a systolic murmur, with irregular heartbeat, and "had congestion of both lungs"; that she had an "arteriosclerotic heart condition" for which

she had been treated about once a month since August, 1939; and that following the accident, she did not change very much, "except changes of a progressive nature." She died on September 11, 1942. The death certificate showed the cause of death as angina pectoris. That "would be the culmination of the arteriosclerosis." A medical witness who had treated her before the accident and had seen her afterwards gave his opinion that her death was "hastened prematurely by the accident"; that "the acceleration of the condition of the heart may come not as a direct result of trauma, but as a fear, a reaction from the trauma"; that trauma in any part of the body may cause an angina attack; that the reason he made the statement that the accident hastened death was "because in these weakened heart conditions the fright itself works on the nervous system, which may directly affect the circulation of the heart; that fright produces chest pains which may continue and aggravate the previous condition"; that he believed that the trauma and injury in this case hastened her death; and that having in mind that she was eighty-one years of age, her progressive arteriosclerotic condition, the treatment he gave her, and that the accident was an accelerating cause, he could not tell to what extent the accident shortened her life. It seems unnecessary to state further details. There was much evidence tending to show that death was caused by a progressive heart condition and that the accident had nothing to do with it.

The evidence was unsatisfactory, but in view of testimony of persons intimate with the deceased from which the jury could have found that there was a marked deterioration in her general health immediately following the accident from which she did not recover upon leaving the hospital and which continued until her death, and in view of the definite opinion of the medical witness to whom we have already referred (an opinion which appears to have been unqualified and founded upon his personal knowledge of the whole case, notwithstanding his repeated use of the word may in explaining it, *Commonwealth* v. *Russ*, 232 Mass. 58, 73–74), we think that the jury could find that the acci-

dent had caused the death of the testatrix at an earlier date than that at which it would have come about from other causes. Such finding is not precluded by the fact that no witness attempted to testify by just how much death had been accelerated. Recovery may be had where there is substantial ground for a finding that negligence has caused death to occur when it did, even though it would have occurred at no very remote date from other causes. *Wiemert* v. *Boston Elevated Railway*, 216 Mass. 598. *Brightman's Case*, 220 Mass. 17, 20. *Walker* v. *Gage*, 223 Mass. 179, 181–182. *Little* v. *Massachusetts Northeastern Street Railway*, 229 Mass. 244, 246. *Charles* v. *Boston Elevated Railway*, 230 Mass. 536, 540–541. *DeMarco* v. *Pease*, 253 Mass. 499, 506. *Colantueno's Case*, 275 Mass. 1, 4. *Wallace* v. *Ludwig*, 292 Mass. 251, 256.

*Exceptions overruled.*