RICHARD HILL *vs.* ARTHUR A. WINSOR & others.

Suffolk. March 11. — Sept. 4, 1875. AMES & ENDICOTT, JJ., absent.

At the trial of an action of tort for personal injuries sustained in consequence of the defendants' steam-tug striking the fender of a bridge on which the plaintiff was at work, the plaintiff's evidence tended to show that the fender, which was built to protect the bridge, consisted of piles driven perpendicularly into the bed of a stream about twelve feet apart, with other piles driven at an angle to each of these, one of which was fastened to the top of each perpendicular pile, with a cap on top extending along the whole row of piles ; that the plaintiff was at work standing on a plank nailed to the piles, and, in order to fit an inclined pile to the perpendicular one and the cap, he had put in a brace about a foot long to keep the inclined pile and the upright one apart while he was at work; that, while so at work, he saw the tug coming towards the fender, and tried to get on the cap, when the tug struck the fender some distance from him, and the jar caused the brace between the piles to fall out, the piles came together, he was caught between them and severely injured. The defendants' evidence tended to show that the plaintiff was not seen by those on the tug until after the accident, though other men at work on the fender were seen ; that the tug was drifted against the fender by the tide, and then started up ; that it was the only way it could get away from the fender; and that it was usual for vessels, when so caught by the tide, so to do. *Held,* that there was competent evidence of the defendants' negligence to be submitted to the jury.

If a person is injured by the negligence of another, he may recover for the natural and probable consequences of such negligence, although the injury, in the precise form in which it resulted, was not foreseen.

If a person is injured by the negligence of another, it is no defence for the wrongdoer that others acted in the same way as he did.

TORT against the owners of the steam-tug Argus for personal injuries sustained by the plaintiff, through the alleged negligence of those in charge of the tug in causing her to strike violently against the fender of Warren Bridge, a bridge between Boston and Charlestown. Trial in the Superior Court, before *Bacon,* J., who allowed the following bill of exceptions :

The plaintiff's evidence tended to show that the plaintiff, with other shipwrights and bridge builders, were, on December 12, 1872, employed by those in charge of Warren Bridge to repair its fender; that this fender was on the upper side of it about eighteen feet from the main structure, and extended from the draw to the wharf on the Charlestown side ; that this fender, when perfect and in good order, consisted of large oak piles about fifteen inches in diameter at the top and about twelve feet apart, driven perpendicularly into the bed of the river, and two driven

at a slight incline therefrom, trending down the river, and fast‑ened to the lower part of the upright piles, and one trending up the river, whose top was fitted to, or intended to fit, the top of the upright pile, and to be fastened to it and to the cap thereon by spikes, the two piles trending down the river being of less length and diameter than the others ; that this cap, consisting of yellow pine timber fifteen inches square, extended along the whole row of piles, resting upon the tops of the same ; that on said day a foreman, with six workmen, including the plaintiff, were employed in repairing the fender ; that they worked in three parties, each party standing on planks sustained by spikes driven into the upper spurshores or· inclined piles of the fender, and about nine or ten feet above the water of the river , that it was then half tide, the river deep, and the ebb-tide setting down at the rate of three to four miles per hour; that the men were standing on the planks, and working in pairs fitting the heads of the upper inclined pile or spurshore to the cap and to the tops of the upright piles ; that two of these men were towards the Charlestown side from the plaintiff, and were work‑ing at a pile about thirty feet east from the spurshore where sev‑eral of the defendants' witnesses testified that the tug struck ; that the plaintiff was at work, standing alone on a plank about sixty feet east from said spurshore, his companion having left him a short time previously ; that, in order to fit his spurshore to the pile and cap, he had put in a brace about twelve inches long and three inches in diameter, to keep the spurshore and pile apart while he was at work ; that two more workmen were fitting a spurshore about sixty feet east of the plaintiff, and the foreman of the work was on the bridge ; that a portion of the spurshores were not completed and fastened to the caps ; that a few minutes before the tug struck against the spurshore, she had come down to the entrance of the draw from some point above the bridge. The defendants' evidence showed that their vessel was about sixty-five feet in length ; that while at the draw the master of the tug was requested to tow down a raft lying near the Fitchburg Rail-road Bridge, and, finding it difficult or impossible to turn around, he backed his tug towards the Charlestown shore, but was not able to reach the raft, as the tide swept him down towards the fender of the Warren Bridge ; that, as he backed over, he passed

near the fender, and was seen by the workmen thereon who were visible from his deck.

The plaintiff's evidence further tended to show that when the master of the tug was nearly across the river, but could not reach the raft, and had drifted within a short distance of the fender, he started the tug with a view to return to the draw, and after running towards Boston, about her length, at the rate of three to four miles an hour, struck one of the upper spurshores of the fender at the point above described; that the blow jarred the fender for the distance of ninety feet; that the workmen, on the planks hung over the river, as soon as they heard the tug and saw it coming, sprung from their planks to reach the top of the fender, and all reached the cap except the plaintiff, who testified that, as he was at work, the first he knew he heard a puffing noise coming along, and he turned his head and looked, and saw the boat coming, and just as he threw his hands over his head to grab at the pile, so as to jump upon the cap, and just as he grabbed the top of the pile, she struck about three piles from where he was, and the moment she struck there was a jar that jarred the whole thing, and knocked his brace out, and the piles came right together as quick as a flash, and caught his fingers between the pile and the cap, and his knee ran in between the two piles below the cap, and there he was fast; that he never heard or saw the boat until he heard the puffing noise, and looked round and saw her coming; that after she first struck she came passing along, striking one pile and the other; that she went right along and struck the pile he was fast in, and she ran her whole length right up hard against it, and passed right on until she got one or two piles by him; that he was thus seriously injured.

Some of the plaintiff's witnesses testified that when they saw the tug returning towards Boston she was twenty feet from the fender, and coming at an angle towards the fender, and that she struck, when thus coming, one of the piles, which jarred the fender and occasioned the injury. Evidence was also put in that the rail of the steam-tug was about three feet above the water, and that she struck the spurshore with the rail on her counter. On cross-examination of the defendants, it appeared that the tug had a steam-whistle, which was not blown when she started back, nor

at any other time; that the air was clear, the water smooth, and that the men aboard gave no warning of their approach.

For the defendants, evidence was offered tending to show that when the tug backed over to Charlestown she was caught by the tide, and was unable to return without running along the fender; also, that no notice was given them that it was out of repair, or any warning whatever that the fender was not in a proper condition for use; that the tug was drifted against the fender near the Charlestown side, and several hundred feet from the plaintiff; that, after waiting a few minutes, the master started towards the Boston side, running along the fender, and being pressed by the tide against the piles, and being unable to get away from them, did not see the plaintiff at or before the time of the accident, and that the tug had worked slowly along by and against a number of the piles before rubbing against the pile referred to above as the point of collision in the plaintiff's testimony; and some of the plaintiff's witnesses, who were at work on the bridge, testified that they saw the tug at the fender, near the Charlestown side, and coming towards them. Some of the defendants' witnesses admitted that they saw from the deck of the tug, when at or near the Charlestown side, men at work on the fender, and some going ashore. Several masters of steam-tugs also testified that they had been thus caught by the tide, and got out of the bay by rubbing against the piles of the fender; and there was some evidence on the part of the defendants tending to show that this was the usual and only way to take a tug out under the circumstances, and said masters testified that they could not have taken the tug out by spring lines or warping.

The plaintiff then offered evidence that the tug could have been taken across to the draw by spring lines or warps, or could have waited until the turn of the tide, and should have waited; also that the fender was designed to protect the bridge, and lives and property thereon, and not for steam-tugs to run by.

The defendants requested the judge to rule as follows: " 1. The master of the tug had a right to sail wherever in the harbor his business called him, and it is immaterial how or for what reason his tug was placed against the fender near the Charlestown shore. 2. If it was usual for tugs, placed in the position in which this tug was before it began to move along the piles, to move along

by the fender, and the master of the tug took the usual course, and had no notice that he could not move along in this way, the plaintiff cannot, upon the evidence, recover. 3. If the fender was not in proper condition for use, and it was not apparent, from inspection, that it was not in such condition, it was the duty of those in charge of the fender to give notice; and if they did not give such notice, and the defendants had no such notice, the plaintiff cannot recover. 4. The plaintiff is chargeable with any neglect of those by whom he was employed, in failing to give notice that the fender was not in proper condition for use. 5. There is no evidence sufficient to warrant the finding of a verdict for the plaintiff. 6. If the defendants' agent had no notice, and no reason to suppose that the fender could not be used in the usual and proper way, there was no negligence in his making such use of it. 7. If the defendants' agent, as a prudent man, had no reason to suppose that moving along the fender would be attended with any injury to the plaintiff, they are not responsible for such injury. 8. If the defendants' agents, as prudent and reasonable men, had no reason to suppose that the moving of the boat along the fender would cause any danger to the workmen, then there was no negligence on their part in using the fender."

The judge refused to give the instructions as prayed for, but gave the following instructions: "The law gives no remedy to a man who suffers an injury by pure accident; and there are many injuries which we are called upon to suffer for which we have no remedy. But when others, by their negligence, injure a person, either in his estate or in his person, the law gives a remedy. The questions in this case are, 'Did the plaintiff suffer an injury?' and 'Was that injury caused by the negligence, the want of ordinary care of the defendants?' The want of ordinary care of the defendants is also the want of ordinary care of their servants or agents, so that the defendants are responsible for the negligence of those persons into whose charge they put the boat. They have a right to navigate the waters of the harbor and of the river; they had a right to go to the places where they did go, provided they did not by negligence, by the want of ordinary care, injure any one. This boat had a right to go to Charlestown, if she could, to get this raft of logs; but in doing that she must so act as not by negligence to injure others. If the boat

was in a position where she could not go forward and accomplish the purpose for which she undertook to go, her captain undoubtedly had a right to return, but he must so return as not to injure another by a want of ordinary care on his part. In order for the plaintiff to recover in this case, the cause of the injury to the plaintiff must, therefore, be found by the jury to be the negligence or the want of ordinary care of those in charge of the boat.

"A man may suffer from the negligence of other people, and yet not have a remedy, if he himself, by his own want of ordinary care, contributes to the injury. We cannot separate the two causes, and say whether it was the defendants' negligence or the plaintiff's negligence that caused the injury.

"It is necessary to consider carefully what is meant by negligence or want of ordinary care. Ordinary care has been defined to be that care which a person of ordinary prudence and capacity would take under like circumstances, — it is reasonable care. The plaintiff must show that he, at the time when he suffered the injury, was in the use of ordinary care; that he did not, by his neglect to use ordinary care, contribute to the injury that he suffered. But what is ordinary care is measured, not only by the acts themselves, but by all the circumstances under which they are performed, — by the exigency which the party is under, when he is called upon to use ordinary care; it is what a prudent person, situated just as the plaintiff was, would do. And we cannot ask of a man who is in extreme peril and danger, whose life is at stake, that he shall stop and reflect as to exactly every step that he shall take. In considering whether the plaintiff was guilty of negligence, therefore, you will have to consider exactly how he was situated, exactly what he was doing, and the situation of the tug coming towards the fender near which he was standing on this platform, suspended above this stream, and you will say whether a person of ordinary prudence and ordinary capacity, and in the exercise of those qualities, would, under those circumstances, be guilty of negligence by doing exactly what the plaintiff did.

"Then you must find further that the defendants were guilty of negligence, and that this negligence was the cause of the injury here. You must consider all the circumstances of the case, — the nature of the structure called the fender or cap, and the way it

was constructed, the uses and the purposes of it, so far as they appear in this case. Was it built as a protection to the bridge, or was it built to allow tugs and boats to run against it, and to get out of this bay, lying over towards Charlestown, by running against it? Then again, as to the exact condition of the structure at the time, that should be considered. Was it in a complete state? It is admitted that it was not. Did the agents of the defendants know that it was not in a complete state? There you have the evidence that they passed up in sight, and these men were at work, and some of the parties in the boat saw them get up and go away. You will take into consideration all the facts and circumstances here, and say whether the defendants were in the use of such care as a person of ordinary prudence would use under exactly the same circumstances.

"It must appear, if you find for the plaintiff, that there was negligence on the part of the defendants in the way in which the boat was run along against these piles, with these men at work upon them, and in their sight, and in the daytime, with the tide running as it was, and under all the circumstances. If that appears, then you will find for the plaintiff. If they could not get out of the place where they were caught, with ordinary prudence, with ordinary care, without injuring others, then they ought to have stayed there and waited until they could. But if you find that they were in the exercise of ordinary care and prudence in attempting to get the boat out, then you will find for the defendants, because what happened would be an accident.

"The accident must be caused by the negligent act of the defendants; but it is not necessary that the consequences of the negligent act of the defendants should be foreseen by the defendants. It is not necessary that either the plaintiff or the defendants should be able to foresee the consequences of the negligence of the defendants in order to make the defendants liable. It may be a negligent act of mine in leaving something in the highway. It may cause a man to fall and break his leg or arm, and I may not be able to foresee one or the other. Still, it is negligence for me to put this obstruction in the highway, and that may be the natural and necessary cause. In this case, it is for the jury to say whether this injury, which the plaintiff suffered, was a nat-

ural and necessary consequence of the negligence of the defend-
ants, if they were negligent."

The jury found for the plaintiff; and the defendants alleged
exceptions to the foregoing refusals to rule.

*O. W. Holmes, Jr., & W. A. Munroe*, for the defendants.

*E. H. Derby & W. C. Williamson*, for the plaintiff.

COLT, J.   In actions of this description, the questions whether
the plaintiff was himself in the exercise of due care, and the de-
fendants' act negligent, whether the injury suffered was due to
that act, as well as the amount of damage to the plaintiff, are, as
a general rule, practical questions of fact to be settled by the
knowledge and experience of the jury.   The defendants' liability
depends upon circumstances which, as the cases arise, are of infi-
nite variety and combination.   If there is any evidence upon
which the jury may legally found a verdict for the plaintiff, that
verdict cannot be disturbed on exceptions as matter of law, unless
there has been some error in the conduct of the trial, or the judge
has failed to state the true test of liability in his instructions as
applied to the facts disclosed.

Under the instructions given in the present case, the jury must
have found that the injury of the plaintiff was caused by neglect
or want of ordinary care on the part of those who, as agents and
servants of the defendants, had charge of the tug-boat; and that
this negligence consisted in not using such care in its navigation
and management as persons of ordinary prudence would use un-
der circumstances of like exposure and danger.   They must have
also found that the plaintiff was himself in the exercise of due
care in attempting to escape the peril to which he was exposed by
the defendants' conduct, and that his injury was therefore due
solely to the defendants' negligence.   The evidence reported jus-
tifies these findings.   The structure upon which the plaintiff was
at work was imperfect and out of repair.   Its condition at the
time, the plaintiff's exposed position upon it, and the knowledge
of that exposure which those in charge of the boat had, or in the
exercise of due care might have had, were elements affecting the
question of the defendants' negligence to which the attention of
the jury was especially called.   It cannot be said, as matter of
law, that the jury might not properly find it obviously probable
that injury in some form would be caused to those who were at

work on the fender by the act of the defendants in running against it. This constitutes negligence, and it is not necessary that injury in the precise form in which it in fact resulted should have been foreseen. It is enough that it now appears to have been a natural and probable consequence. *Lane* v. *Atlantic Works*, 111 Mass. 136, and cases cited.

A majority of the court are of opinion that there was no error in refusing to give the specific instructions requested; and that, so far as they contain correct propositions of law applicable to the facts presented, they appear to have been given. The court was not bound to adopt the precise language of the request. As to the second and sixth, it is enough to say that there is no rule of law which exempts one from the consequences of his negligent conduct upon proof that he proceeded in the usual manner and took the usual course pursued by parties similarly situated, although he was without notice that he could not safely do so. The defendants cannot protect themselves by proving the careless practices of others, and the circumstances here were such as to justify the inference that the defendants were bound to take notice of the danger.

The third and fourth requests improperly made the plaintiff's right to recover wholly dependent on the fact that notice to the defendants had been given by the parties in charge of the work, that the fender was not in proper condition for use, although there was evidence that the men on the tug saw the workmen on the bridge and the danger to which they were exposed in time to have prevented the injury.

The seventh and eighth are in effect requests for instructions that the defendants were not liable if they used ordinary care, and this rule was given to the jury, as we have seen.

*Exceptions overruled.*