BOLE v. PITTSBURGH ATHLETIC CO.

(Circuit Court of Appeals, Third Circuit. May 14, 1913.)

No. 1,729.

THEATERS AND SHOWS (§ 6*) — DEFECTIVE PREMISES — INJURY TO PATRON — PROXIMATE CAUSE.

Defendant controlled a grandstand, to which it invited the public to see professional baseball games, charging an admission fee therefor. Plaintiff, on a holiday, went to the grandstand, where 20,000 people were present to witness a game. Defendant maintained a trapdoor in a passageway, which on the occasion in question had been left open by one of defendant's employés, and this narrowed the passageway leading to the elevators to about five feet. As plaintiff sought to go to the elevator through this passageway, the crowd became dense from pressure from behind, and from the fact that only one person at a time could pass through the guard rails because of the open trapdoor. As the crowd was surging through the passageway, plaintiff was jostled by some person so that he fell across the edge of the door and sustained the injuries complained of. There was no disorder, no assault made on plaintiff, and nothing to indicate other than the normal condition attending a thronged and crowded passageway. *Held,* that the jostling of the crowd against plaintiff was a mere incident, the proximate cause of the injuries being, as a matter of law, the negligence of the defendant in narrowing the passageway by leaving the door open; and hence it was error to submit the question whether the proximate cause was the open trapdoor or the surging crowd to the jury.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 6; Dec. Dig. § 6.*

Liability for injuries to persons attending theaters, shows, or other places of amusement, see note to Parker v. Cushman, 117 C. C. A. 77.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Robert A. Bole against the Pittsburgh Athletic Company. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

John S. Willer and John O. Wicks, both of Pittsburgh, Pa., for plaintiff in error.

Clarence Burleigh and William A. Challener, both of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The case before us arises out of an action in the court below for personal injuries sustained by the plaintiff below (plaintiff in error), on a grandstand controlled by the defendant below (defendant in error), at the Forbes Field Baseball Park, in the city of Pittsburgh.

On the afternoon of September 16, 1911, plaintiff, having paid his admission, was going along a passageway on the first floor of the grandstand, toward the elevators, to be taken up to his box in one of the galleries. On that particular afternoon, the defendant had allowed to remain open an iron trapdoor, three feet square, covering an opening in the main floor of the grandstand, leading to the machinery beneath that operated the elevators. When shut, the door was flush with the cement floor, and formed part of the floor of the passageway. When open, the top of the door faced the elevators and narrowed the passageway between it and the elevators, according to the presumably accurate measurement of the blueprint in evidence, to a width of five feet. It was testified that there were about 20,000 people at the game on that particular afternoon, and many hundreds' of them who used the elevators had to pass through this narrow passageway. The door, when raised, stood at an angle of about 80 or 85 degrees from the plane of the opening which it was designed to cover, and was held rigidly in place by brace irons on either side of it.

A great crowd of people were pressing through this passageway between the uplifted door and the elevators, which became more dense at that point from the pressure of those behind, as the guard rails to the elevators only admitted one at a time. The only testimony as to how the accident happened was that of the plaintiff himself. The following is the essential part of his testimony, as it appears in the record:

"The crowd was progressing towards the rear to get into the elevator. I was going along, without any idea of any obstruction in the way. The point at which you pass around to get into the elevator, around the guard, is only a very short distance from the trapdoor, which was propped open,—I should say not more than six or seven feet [the evidence of the blue print is five feet],—and this dense crowd had to go through that small opening. Somebody jostled me, and I couldn't see anything, lost my balance, and went right over this thing. Nobody could possibly have escaped it in the position I was in. The trapdoor extended about three feet, and I fell over and doubled up like a jackknife."

Looking at a photograph, he testified:

"Well, the crowd was surging through here (indicating) to get around here (indicating) to get into the elevator. I was coming around the crowd. I was on the outside, the crowd surging around here. * * * There isn't a very strong light here, and if you are not watching for that thing, with the crowd around you it is hard to find. I was in this crowd and somebody jostled me, and I went over the edge of it. I tripped here first and lost my balance."

On cross-examination, also, he says:

"There was difficulty on this particular occasion, because the crowd was so dense nobody could have seen it. I was all around in that crowd, a swirling crowd, trying to get through a seven-foot opening. I should say there were several hundred people ahead of me, waiting to get up on the elevator. I recall that there were 20,000 people there that day."

The case was submitted to the jury with a charge by the court, and a verdict was rendered for the defendant. After refusal of a motion by plaintiff for a new trial, to the judgment entered on this verdict, the present writ of error has been sued out by the plaintiff. The assignments of error are founded upon exceptions to certain portions of the charge of the court. The question raised by these assignments concerns the propriety, in relation to the facts of the case, of what was said by the court in its charge, as to the proximate cause of the injury suffered by the plaintiff. The parts of the charge excepted to are as follows:

"Now if you find the defendant was not negligent, then that is the end of this case, but if you find the defendant was negligent, there is another question that you are to consider, and that is, whether that negligence was a direct and proximate cause of the injuries to the plaintiff. ·* * * If the plaintiff was jostled or pushed and thereby forced upon this hatchway door, and if he would not have come in contact with the hatchway door except for that, then you may conclude that the jostling or pushing was the direct and primary cause of the injury. If the pushing and jostling was the direct cause of the injury to the plaintiff, then you could not hold the defendant for injuries which were caused by another. * * * I think one of the witnesses testified there was some loss of power and the engineer had to go down and start up the power. That might have caused an unnecessary and an unusual crowd there, but if the pushing and jostling was the direct and efficient cause of the injuries to the plaintiff, without which he would not have fallen over the grating and had been hurt, then the verdict should be for the defendant, because you cannot—should not make one party pay for what another party has brought about, but you are to consider all the facts in the case and determine whether or not the jostling and pushing was the direct and proximate cause, or primary cause, or whether it was the open hatchway door."

We are compelled to differ from the learned and careful judge of the court below, in the view here taken of the application of the rule, "Causa proxima, non remota spectatur." It would answer no good purpose to indulge in the subtleties of abstract reasoning to which this maxim so often gives rise. In its juridical sense, it would seem incapable of such definition as would furnish a practical test of liability or nonliability in a given case. The terms used do not accurately connote the conceptions they are intended to cover. Whether "proximate" means "nearest" in point of time or space to the result complained of, depends upon circumstances. "Primary" may sometimes

better describe the efficient or responsible cause of a legal liability,—though first and in point of time the most remote. In many, if not in most, cases, that cause of an injury to which legal liability attaches may be better described as the "efficient" cause. So many elements, however, may enter into the determination of what is the efficient cause, and so long a train of antecedents may come under consideration, "but for" the happening of any one of which the result complained of would not have occurred, that we may still be involved in the difficulties of selecting from the train of antecedents the one to which should attach the legal liability sought to be imposed. The practical application of the rule must depend upon the circumstances of each individual case.

Parsons, in his work on Contracts (6th Ed. vol. 3, p. 179), says:

"Not only is there no definite rule or clear and precise principle given, by which we may measure the nearness or remoteness of effect in this respect; but the highest judicial authorities are so directly antagonistic, that they scarcely serve as guides to lead us to a conclusion. * * * We have been disposed to think that there is a principle, derivable on the one hand from the general reason and justice of the question and on the other hand applicable as a test in many cases, and perhaps useful, if not decisive, in all. It is that every defendant shall be held liable for all of those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into his consideration."

For this rule, the author refers to the high authority of Pollock, Chief Baron, in Rigby v. Hewitt, 5 Exch. 240. This rule, so far as it extends, satisfies the reason and common sense which is the essence of the common law, and is applicable to the present case.

The defendant owned or controlled the premises upon which the accident, which resulted in the injury complained of, happened. The building was erected for the accommodation of the large crowds that gather to witness the athletic contests and games, which were conducted by the defendant for profit, the public being invited to patronize the same. The entrance and passageway along which the plaintiff proceeded after paying the sum demanded for his admission, was necessarily for the accommodation of the crowds who were expected to throng such places of amusement. It is not contradicted that, on the holiday afternoon in question, about 20,000 people were present to witness a game of baseball that excited the public interest. The testimony of the plaintiff is not contradicted, that many hundreds were crowding through the passageway described, which led to elevators, by which persons were taken to galleries on an upper tier or floor. That the iron trapdoor in the concrete floor, on the afternoon in question and while the crowd was pressing along the passageway, had been left open by some one in the employ of the defendant, is not denied. This open door, facing the elevators, narrowed the passageway between them and it to a width of about five feet, and, according to the uncontradicted testimony of the plaintiff, the crowd at that point became dense from the pressure of those behind, and from the fact that only one person at a time could pass through the guard rails to the elevators. The plaintiff says he was on the outside of this crowd;

that is, on the side nearest the trapdoor, and that this crowd was "surging" through the narrow passage between the trapdoor and the elevator; that the light was not very bright; that by reason of the crowd, he did not see the door; and that, by being jostled by some one in the crowd, he fell across the edge of the iron door and sustained the injuries complained of. There is nothing to indicate that such jostle was other than an incident of the ordinary pressure of a crowd thronging into a narrow passage. There was no disorder, no assault made upon him, and nothing to indicate other than the normal condition attending a thronged and crowded passageway.

No question of proximate cause is here involved. The only question which should have been submitted to the jury is the simple one of the defendant's negligence. The charge was, not that there was negligence in the location of the trapdoor opening, but in the alleged improper raising of the trapdoor, and allowing it to stand as a barrier in the pathway of persons approaching the elevator. In disposing of this question, the jury should be told that they were to take into consideration the conditions which would naturally arise in the presence of a crowd, and defendant should be held liable for those consequences (and those consequences only) which might have been foreseen and expected as a result of its conduct in permitting the trapdoor, under the circumstances, to remain open. But, as said by Mr. Justice Colt, in Hill v. Winsor, 118 Mass. 251:

"It is not necessary that injury in the precise form in which it in fact resulted should have been foreseen. It is enough that it now appears to have been a natural and probable consequence."

We are therefore compelled to the conclusion that the learned judge of the court below was in error, in submitting to the jury, as was done in those portions of his charge upon which the assignments are based, the question, whether the negligence of the defendant, if found by them, was the direct and proximate cause of the injuries to the plaintiff, or, whether the jostling and pushing was the proximate or primary cause. The "surging crowd" and the "jostling" were in no sense the juridical cause of the accident, though they were the conditions which might make the negligence of the defendant the efficient cause.

The judgment below is therefore reversed, with directions for a venire de novo.