**THE B & E, Inc.,**

v.

**F/V THE MARY J. LANDRY.**

No. 57-31.

United States District Court
D. Massachusetts.

Nov. 19, 1957.

---

Felix F. Perrone, New Bedford, Mass., for plaintiff.

Kneeland & Splane, James A. Whipple, Boston, Mass., for defendant.

ALDRICH, District Judge.

On March 15, 1957, while scallop fishing SE of Pollock Rip, libellant's vessel, the B & E, towed under a buoy left by libellee's vessel, the Mary J. Landry, to mark a good piece of ground. Later that day she spoke the Landry and told her she had put down a substitute. The next morning the Landry, not having located the new buoy, came alongside the B & E and engaged her master in conversation. Thereafter a collision occurred and the B & E was sunk. This action is brought to recover her value.

For some hours, off and on, the B & E's clutch had been slipping. At the time in question she was lying to in order to tighten it, and to repair some of her gear. What breeze there was was on her starboard bow. The weather was moderate, with some swell. The Landry came up under her stern and lay to off her port beam within hailing distance on a roughly parallel course. I do not find that this was an improper maneuver, or in itself involved danger of collision, but it did create a risk of eventual collision if she were to stay there too long. This risk was equally apparent to the B & E, who made no complaint. Instead, the two captains engaged in somewhat heated conversation regarding the cut buoy and the unfound substitute. This conversation lasted several minutes, during which time the boats drifted together, the bows converging somewhat, and the B & E ranging slightly ahead. When they had come quite close the Landry terminated the conversation, and started across the B & E's bow. Due, perhaps, to continued irritation over the missing buoy, she proceeded in a slap-dash manner, swung over, and struck the stem of the B & E a flip with her starboard sheathing. The blow rolled out the B & E's stem, and started her planking, both immediately above and below the water line. Attempts to keep ahead of the incoming water with the pumps failed, and she sank in about four hours.

I find the Landry solely at fault for the collision. I do not do this by adopting the B & E's contention that, by reason of having come up on the B & E, the Landry was an overtaking vessel, with a duty to keep clear. The length of time the vessels lay to, conversing, terminated that relationship and burden. The collision was due to subsequent improper maneuvering. Nor is it important that the ensuing damage was more than might have been expected. Hill v. Winsor, 118 Mass. 251.

The Landry seeks to hold the B & E at fault, if not for the collision, at least for the subsequent sinking, on the ground that good seamanship could have saved her. I must say that it seems to me that had I been aboard I would have tried to plaster her bow with the riding sail and run slowly ahead. However, this involved a number of difficulties, not only the cold water at that time of year for such probable over-the-side repair, but the jagged hole, with the sprung stem, and the sharp ends of the planking, offered a serious chafing problem in a sea. I am not quite prepared to say it was negligent not to believe this feasible. I am impressed by the fact that the Landry's captain, who was very vocal on this subject on the stand, if it was such an apparently good idea, said nothing about it at the time. His given explanation was that it was none of his business. I have never noticed fishermen to be peculiarly reticent, and in this case it was very much his business, as he faced the clear possibility of being charged with the collision. I am not satisfied that the vessel would have been saved, and do not find libellant at fault.

The matter of damages, and the libellee's claim to limit, will await further hearing.