Troy, Paul E., J.
This is a negligence action in which the plaintiff, Wilaiwan Bjorgolfsson (“Bjorgolfsson”), alleges that on April 9, 2004 she was assaulted and raped in a guestroom of a Boston, Massachusetts hotel operated by the co-defendant, Destination Boston Hotel, d/b/a Nine Zero Hotel (“Nine Zero”) by a former Nine Zero employee, MacArthur T. Belin, Jr. (“Belin”). Prior to the alleged sexual assault, the plaintiff was at a bar owned by the defendant, Bosworth Place, Inc., d/b/a/ Bean-town Pub (“Beantown Pub”), where she alleges she was negligently served alcohol after she was visibly intoxicated. This matter is before the Court on the motion of the defendant, Beantown Pub, forsummaiy judgmentunderMass.R.Civ.P. 56. Beantown Pub has moved for summary judgment on Count I (Negligence and Respondeat Superior). For the reasons discussed below, BeantownPub’s motion for summaiyj udgment is ALLOWED.
Background
Viewing the facts and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, the plaintiff, the summary judgment record reflects the following. On April 9, 2004, the plaintiff went alone to Beantown Pub, arriving at approximately 11:00 p.m. Earlier in the evening, she drank two glasses of red wine with dinner at her home in Malden, Massachusetts. She testified that she felt no effects from the wine and had no difficulty driving from her apartment to Boston. At the bar, she met Roger Zeghibe (“Zeghibe”), the general manager of Beantown Pub and one-third shareholder in Bosworth Place, Inc. (“Bosworth"), the entity that owns Beantown Pub. Bjorgolfsson had at least one glass of red wine at the bar, but she could not remember how many glasses of wine she drank that night. However, she remembers that her glass was constantly full throughout the evening. She believed that Zeghibe was associated with Beantown Pub, as he ordered drinks without paying for them, walked behind the bar, and went into the employee-only area of the tavern. The plaintiff also believed that Zeghibe filled her glass with red wine throughout the night.
Bjorgolfsson and Zeghibe played pool in the rear section of Beantown Pub for over one hour. As the two played pool, the plaintiff began to feel more intoxicated and commented to Zeghibe about her level of intoxication. At some point in the evening, the plaintiff told Zeghibe she needed to go to the ladies room. She was in the women’s restroom for a short period and then decided to leave the bar because she knew she was intoxicated and wanted to avoid Zeghibe, who at some point in the evening expressed a sexual interest in her. Although she did not fall on her way out of the bar, she had trouble walking. She was too intoxicated to notice if there were any bouncers or security guards outside of Beantown Pub when she left.
The plaintiff then went to her car, which was parked in an alley between Beantown Pub and Nine Zero on the bar’s side of the street, relatively close to the entrance to the bar. She drove away but became concerned that she was too intoxicated to drive. She described feeling dizzy and drunk although she also stated that she was not confused and felt “clear headed.” She drove around the block and then back to the same spot where she had been parked before. The entire trip took approximately fifteen to thirty minutes. After she returned to the same parking spot, *420 Bjorgolfsson opened her car door and, while still sitting in the driver’s seat with her seatbelt on, vomited. After a short period of time, individuals surrounded the vehicle while the plaintiff continued vomiting, including Nine Zero and Beantown Pub employees, and at least one Beantown Pub patron. It is not clear whether Belin was one of the individuals around the vehicle.
One of the individuals that came out of the bar was Sean Daley (“Daley”), a Beantown Pub bartender. Daley came out to assist her and took the plaintiffs car keys, stating “We do not want you to drive.” He assisted her out of the driver’s seat of the car. As the plaintiff moved to the rear seat, she was stumbling and the individuals were having difficulty communicating with her because of her intoxicated state. A Nine Zero employee, Takayuki Shindo (“Shindo”), noticed the plaintiffs condition and ran back inside the hotel to get bottled water for Bjorgolfsson. During that time Daley helped the plaintiff into the back seat of her vehicle. He asked her where she lived so that he could send her home in a cab. The plaintiff stated that she did not want to take a cab.
As the plaintiff was lying face down in the back seat of her vehicle, Daley suggested that she stay the night at Nine Zero.[2] The plaintiff contends that she stated she did not want to stay in the hotel and, since she did not know the people assisting her, she did not feel safe. She called 911 at 2:51 a.m. on April 10, 2004, and spoke with a police operator. She requested police assistance. However, before the police could arrive, the plaintiff was carried across the alley to the Nine Zero hotel lobby. It is not clear whether it was employees of Nine Zero, Beantown Pub, or both, who helped cany the plaintiff across the alley and into the lobby. However, once the plaintiff was inside the Nine Zero lobby, the Bean-town Pub employees left.
Bjorgolfsson contends at some point around this time, Belin then removed her wallet from her purse, without her consent, removed a credit card, and charged a room to the plaintiffs card, also without her consent. Although Nine Zero had a policy that forbade employees from checking in intoxicated persons during the overnight shift, Belin placed the plaintiff on a luggage cart in the lobby and checked her into the Hotel. Other than Belin and Shindo, the only other Nine Zero employee working at this time was Emanual Luma (“Luma”), the security officer on duty. The plaintiff contends that Shindo was the hotel supervisor at that time, a claim which Shindo denies. Shindo contends he was only a guest service agent with “no obligation to be of any authority” over other employees.
Belin then wheeled the luggage cart, with the plaintiff in it, to an elevator and up to Room 1103. The plaintiff now contends that there was no other Nine Zero employee present, which was in violation of Nine Zero’s policies and procedures.[3] On the way to the room, the plaintiff contends that Belin looked at her and stated: “Let me see your face, look up, you are beautiful.” Upon arrival to Room 1103, Belin lifted Bjorgolfsson onto the bed. Bjorgolfsson contends that Belin then removed her clothing without her consent. Some time after this occurred, Shindo arrived at Room 1103. Shindo knocked on the door and heard the plaintiff say that she needed a trash can in which to vomit. Shindo continued to knock on the door without a response.
After several minutes Belin finally answered the door. The plaintiff was lying prone on the bed, she did not have her top on, and her pants had been removed. After finally leaving the room with Shindo, Belin admitted to Shindo that he had removed the plaintiffs clothing. Despite this behavior, which Shindo described in his deposition as “inappropriate,” he allowed Belin to again enter the plaintiffs room on at least two more occasions that evening. Over the course of the early morning hours of April 10, 2004, at least four entries to the plaintiffs room by hotel staff were recorded by the hotel’s electronic door lock system. The plaintiff contends that during one of these entries, Belin raped her.
The following morning, the plaintiff awoke at approximately 8:30 a.m. knowing that she had been raped. She called the hotel manager who identified herself as “Jennie.” Bjorgolfsson advised Jenny that she had been raped. Jennie came to Bjorgolfsson’s room and spoke with her. Jenny then contacted the Boston Police, who arrived and interviewed the plaintiff. The plaintiff was then transported by ambulance to New England Medical Center (“NEMC”) and treated for the rape she had sustained. Detective Joseph Kennedy (“Kennedy”) of the Boston Police Sexual Assault Unit was contacted and responded to the NEMC. Once there, Kennedy spoke with the plaintiff in her hospital room, where he found her lying face down on her hospital bed, unable to sit up or turn over because she was sick from drinking the night before. Bjorgolfsson was vomiting while the detective spoke with her about the previous night’s assault and rape.
Belin was the only Nine Zero employee who has refused to cooperate with the police investigation regarding the plaintiffs rape. More specifically, he has refused to provide a DNA sample and invoked his Fifth Amendment privilege when asked at his deposition whether he raped the plaintiff. In addition, based on evidence in the record, Nine Zero was on notice when it hired Belin that he had a prior violent criminal history. Specifically, there is evidence in the record that Nine Zero was aware that in 1999, Belin had been charged in the Suffolk Superior Court with (1) possession of a dangerous weapon, third offense; (2) possession of a dangerous weapon, no identification, second *421 offense; and (3) resisting an officer making a lawful arrest. Furthermore, there was evidence in the record that a female employee had reported to the Hotel that Belin had displayed offensive behavior when he allegedly called her a “bitch.” Several months after the plaintiffs assault and rape, Nine Zero terminated Belin for a series of policy violations and confrontations with other employees, which the Hotel regarded as “creating a hostile working environment, violating [Nine Zero’s] workplace violence and anti-harassment policy.”
Discussion
I. Standard for Summary Judgment
Entry of summary judgment is appropriate where there are no material facts in dispute and where the moving party is entitled to judgment as a matter of law. Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Mass.R.Civ.P. 56(c). Evidence submitted in connection with a motion for summary judgment is to be viewed in the light most favorable to the nonmoving party, and all permissible inferences must be drawn in that party’s favor. Girardi v. Gabriel, 38 Mass.App.Ct. 553, 554 (1995). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 552 (1976). Mass.R.Civ.P. 56(c). The court should not weigh evidence, assess credibility, or find facts. The court may only consider undisputed material facts and apply them to the law. See Kelly v. Rossi, 395 Mass. 659, 663 (1985). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
Although summary judgment is seldom granted in negligence actions, it is appropriate “if a plaintiff has no reasonable expectation of proving that ‘the injury to the plaintiff was a foreseeable result of the defendant’s negligent conduct.’ ” Hebert v. Enos, 60 Mass.App.Ct. 817, 820-21 (2004), quoting Kent v. Commonwealth, 437 Mass. 312, 320 (2002). In addition, while “[q]uestions of reasonable foreseeability are ordinarily left to the jury . . . the judge may properly decide them as a question of law where the harm suffered, although within the range of human experience, is sufficiently remote in everyday life as not to require special precautions for the protection of patrons.” Westerback v. Harold F. LeClair Co., Inc., 50 Mass.App.Ct. 144, 146 (2000), review denied, 432 Mass. 1111 (2000); see Barnes v. Geiger, 15 Mass.App.Ct. 365, 367-69 (1983).
II. Claim Against Beantown Pub
Beantown Pub has moved for summary judgment on Bjorgolfsson’s claim for negligence and Respondeat Superior. The plaintiff alleges that Beantown Pub was negligent in serving her alcohol after she was visibly intoxicated and, additionally, was negligent in its involvement (through Beantown Pub employees) in the decision to check Bjorgolfsson into the Nine Zero on April 9, 2004. Such negligence, the plaintiff contends, proximately caused her to be assaulted and raped. Beantown Pub moves for summary judgment, arguing that as a matter of law, this Court should determine that: (1) Bjorgolfsson was not visibly intoxicated at the time she was served alcohol; and (2) the assault and rape of the plaintiff by Belin was not reasonably foreseeable and was a superseding and intervening cause of the harm, breaking the chain of causation and precluding Beantown Pub’s liability.
A. Legal Framework
“To be liable for negligent conduct, one must have failed to discharge a duty of care owed to the plaintiff, harm must have been reasonably foreseeable, and the breach or negligence must have been the proximate or legal cause of the plaintiffs injury.” Christopher v. Father’s Huddle, 57 Mass.App.Ct. 217, 222 (2003). The plaintiffs claim for negligence against Beantown Pub is based on two distinct failures to discharge a duty of care it owed Bjorgolfsson: (1) the duty not to serve her alcohol after she was visibly intoxicated; and (2) the duty of reasonable care to prevent foreseeable harm it owed to her as a patron who left the tavern and then, upon her return, was attended to by Beantown Pub employees. Bjorgolfsson must show that based on the evidence in the summary judgment record, viewed in a light most favorable to her, Beantown Pub breached one of the two duties it owed to her, that the harm which came to her was reasonably foreseeable, and that the breach or negligence must have been the proximate or legal cause of her injuries. Christopher, 57 Mass.App.Ct. at 222.1 shall discuss each of the elements of negligence in turn.
B. Beantown Pub’s Duty Not to Serve Alcohol to a Visibly Intoxicated Patron
In the Commonwealth, in order to maintain an action for negligence against a restaurant or a tavern, the plaintiff must produce evidence that is sufficient to permit the fact finder at trial to conclude that it is more likely than not that the tavern keeper served alcohol to a patron, whom he knew or should have known, was intoxicated. Cimino v. The Milford Keg, Inc., 385 Mass. 323, 327 (1982). The plaintiff must establish that the patron “appeared intoxicated” at the time she was served by the tavern *422 keeper. Douillard v. LMR, Inc., 433 Mass. 162, 164 (2001). ‘The negligence lies in serving alcohol to a person who already is showing discernable signs of intoxication.” Vickowski v. Polish American Citizens Club, 422 Mass. 606, 610 (1996). A tavern owner has no duty to an intoxicated patron who was not served alcohol in his or her establishment. O'Gorman v. Antonio Rubinaccio & Sons, Inc., 408 Mass. 758, 761 (1990).
However, “(d]irect evidence of obvious intoxication is not necessarily an essential part of a plaintiff s proof ... [A] jury confronted with evidence of a patron’s excessive consumption of alcohol properly could infer, on the basis of common sense and experience, that the patron would have displayed obvious outward signs of intoxication while continuing to receive service from the licensee.” Vickowski, 422 Mass, at 611 (internal citations omitted). In addition, “other forms of circumstantial evidence also might be sufficient to create a jury question on whether a licensee had served alcoholic beverages to a patron displaying obvious signs of intoxication.” Id. at 611-12. Massachusetts courts, however, have been “reluctant to accept evidence of subsequent, obvious intoxication as a surrogate for evidence of a patron’s demeanor at the relevant time . . . [due to] the uncertainties of the situation, including the possibly delayed impact of the consumption of alcohol, and the unknown effect on a patron of the last drink served to [her] by a licensee.” Id. at 612 (emphasis added).
Bjorgolfsson contends that a combination of direct and circumstantial evidence, gleamed from depositions, affidavits, accounts from the individuals who witnessed the plaintiff soon after she left Bean-town Pub, the plaintiffs toxicology report taken the morning after she was raped, and a police report descfibing Bjorgolfsson’s condition the morning after the night she was raped, are sufficient to defeat Beantown Pub’s summary judgment motion. Specifically, for direct evidence of Bjorgolfsson’s alleged apparent intoxication at the time she was last served at Beantown Pub, the Plaintiff relies on her deposition and affidavit statements that: (1) from the point that she first sat down at the bar, to the point where she stopped playing pool with Zeghibe, the plaintiff was “constantly drinking red wine”; (2) while playing pool over the course of between one and two hours with Zeghibe, Zeghibe and other Beantown Pub employees supplied the plaintiff with red wine such that her “glass was always full”; (3) after Zeghibe complimented the plaintiff on her pool playing, she responded: “the more intoxicated or the more drunk I am, the [better I play]”; and (4) the plaintiff was in such an inebriated state while at Beantown Pub that she had trouble walking normally when she left the bar.
For circumstantial evidence of Bjorgolfsson’s apparent intoxication, the plaintiff relies on the following: (1) deposition statements made by Nine Zero and BeantownPubemployeesthatsawtheplaintiffshortly aftersheleftBeantownPubinanobviouslyintoxicated state; (2) theMay26,2004Massachusetts State Police toxicology report which shows that the plaintiff did not test positive for any drugs; (3) statements from Kennedy’s follow-up investigation report, which describe the Plaintiff on the morning after her sexual assault as “lying face down on her hospital bed... she wanted to talk to me but she couldn’t sit up or turn over because she was so sick from drinking the night before. She complained she was dieing and vomited several times while I was there.”
The direct evidence alone, if accepted by a finder of fact, would be enough for Bjorgolfsson to establish that Beantown Pub negligently served her alcohol after she showed signs of visible intoxication. In addition, the circumstantial evidence (supported by the direct evidence and not used merely as a surrogate), bearing on Bjorgolfsson’s conduct, demeanor, and physical condition, both soon after leaving the bar and the morning after the alleged rape, would permit a reasonable inference to a sufficient degree of probability. Such evidence would, in effect, impose liability on the basis of acceptable speculation on the part of a jury. See Vickowski, 422 Mass. at 610. Therefore, Beantown Pub’s argument that summary judgment should be allowed on the ground that the Bjorgolfsson can adduce no evidence that Beantown Pub served her after she was visibly intoxicated must fail.
C. Beantown Pub’s Duty of Reasonable Care to Prevent Foreseeable Harm to Its Patrons
In addition to its duty not to serve alcohol to visibly intoxicated patrons, a tavern has a duly of reasonable care to prevent foreseeable harm to its patrons. Christopher, 57 Mass.App.Ct. at 224. The duty to protect patrons also does not require notice of intoxication, but may be triggered when conduct of another patron puts a tavern owner or its employees on notice that harm is imminent.” Id. at 224 (citing cases). Such a duiy does not end as soon as a patron leaves the tavern. See id. at 224. “As with the duty to protect third parties from the negligent driving of an obviously intoxicated person . . . the duiy to protect patrons extends to all reasonably foreseeable harm including, in some circumstances, harm that occurs from a distance from the premises.” Id. (internal citations omitted).
In Christopher, the Appeals Court suggested that the duiy owed to protect patrons from other patrons is different from the duty owed to protect patrons from strangers having no connection to the tavern. See Christopher, 57 Mass.App.Ct. at 224. See and compare O’Gorman, 408 Mass. at 761 n.2 (bar owner “has the duty to protect persons on or about the premises from the dangerous propensities of its patrons, served or unserved. When the bar has served a potentially dan *423 gerous patron, the duty may extend beyond the premises”), and Tobin v. Norwood Country Club, Inc., 422 Mass. 126, 135 (1996) (country club’s duty extends to an intoxicated teenage patron who left the club on foot and began walking in the breakdown lane of a highway and was then struck by a passing vehicle), with Westerback, 50 Mass.App.Ct. at 146-47 (no duty to an intoxicated patron who, after leaving the premises of a tavern, was raped by individuals having no connection to the tavern).
In the present case, after the plaintiffs failed attempt to drive herself home, a Beantown Pub employee observed the plaintiff in her intoxicated state and attempted to assist the plaintiff, stating “we do not want you to drive.” The employee took the plaintiffs car keys and put her in the back seat of her car. The plaintiff was not aware that the employee was attempting to assist her and, at 2:51 A.M., dialed 911 because she did not feel safe. The employee also asked the plaintiff where she lived in order to send her home in a cab, but the plaintiff stated that she did not want to take a cab home. The plaintiff was vomiting throughout this interaction.
These factors and observations — the plaintiffs clearly intoxicated state, her prior attempt to drive her vehicle, her call to 911 for police assistance, and her vomiting — triggered a duty on the part of Bean-town Pub through its employee. Upon this knowledge, Beantown Pub was under a duty to take reasonable steps to prevent foreseeable harm to the plaintiff, which included ensuring the she did not again attempt to drive her vehicle, wander off alone or unattended into nearby city streets, or become unconscious. In'light of these circumstances, Bean-town Pub should have taken reasonable steps to prevent foreseeable harm by calling the police themselves, or waiting for the response to the plaintiffs 911 call before suggesting that the plaintiff be moved into Nine Zero.
D. Beantown Pub’s Breach of Its Duties Was Not the Proximate Cause of the Plaintiffs Injuries
For purposes of this motion, I assume that Bean-town Pub breached a duty owed to Bjorgolfsson when it: (1) served her alcohol after she showed signs of intoxication; and (2) when it failed to call the police or wait for the police to arrive when it came upon the plaintiff after she had left the tavern. However, having determined that the tavern was in breach of the duties it owed to the plaintiff, I now consider whether there is evidence in the record to support a finding that the tavern’s negligence proximately or legally caused Bjorgolfsson’s injuries. See Poskus v. Lombardo, 423 Mass. 637, 639 (1996).
Generally, the intervening act of a third party is a superseding cause that breaks the chain of causation when the original actor could not have foreseen the occurrence of such an act. Copithorne v. Framingham Union Hosp., 401 Mass. 806 (1988); see Westerback, 50 Mass.App.Ct. at 145. “However, liability will be imposed where the actor realized, or should have realized, the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit a crime . . . The specific kind of harm need not be foreseeable . . . provided it was foreseeable that there would be violence towards others.” Westerback, 50 Mass.App.Ct. at 145 (emphasis added), quoting Gidwani v. Wasserman, 373 Mass. 162, 166 (1977). In addition, when assessing potential foreseeability as a matter of law, the Supreme Judicial Court has noted that “spatial and temporal proximity” are relevant, at least in the context of imposing limits on the scope of liability for a bystander’s claim of emotional or psychological injuries. Migliori v. Airborne Freight Corp., 426 Mass. 629, 633 (1998).
As far as this court is aware, no Massachusetts appellate decision has held that “a tavern owner may be found liable for an intoxicated patron’s injuries that were caused by a criminal act perpetrated off the tavern premises by individuals with no connection to the tavern.” Westerback, 50 Mass.App.Ct. at 146. In those decisions where proprietors have been held liable to their patrons for criminal acts of others, the defendant either negligently failed to provide reasonably needed security precautions in or just outside the premises, or failed to guard against the consequences of reasonably foreseeable criminal conduct. Poskus v. Lombardo’s of Randolph, Inc., 423 Mass. 637, 639-40 (1996); Westerback, 50 Mass.App.Ct. at 146. See also Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 192 (1994) (murder of guest in hotel located in a high-crime area that had inadequate security to discourage intruders); Flood v. Southland Corp., 416 Mass. 62, 72-72 (1993) (foreseeable that drunken youths, one armed with a knife, loitering around outside convenience store, might stab someone); Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788, 792-93 (1988) (stabbing of passenger reasonably foreseeable result of inadequate security in bus station); Mullins v. Pine Manor College, 389 Mass. 47, 62-63 (1983) (rape of student reasonably foreseeable result of inadequate campus security); Cimino, 385 Mass. at 331 (drunk driving foreseeable result of tavern’s serving intoxicated patron); Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 452-53 (1969) (patron’s shooting of another foreseeable result of bar serving alcohol to intoxicated and boisterous patron); Magaw v. Massachusetts Bay Transp. Authy., 21 Mass.App.Ct. 129, 131-35 (1985) (MBTA liable in mugging of female patron in unlighted tunnel that passed under the tracks at the Ashmont station).
*424 In all of the aforementioned cases, there were factors supporting a finding of foreseeability, including a history of prior criminal episodes, the unruly behavior or drunkenness of other patrons on or just off the premises, failure to provide adequate lighting in secluded areas of the premises, or a failure to provide security, such as guards, locks, alarms, or surveillance, in places where such precautions are the norm. Thus, I must look to the facts of this case, in the light most favorable to the plaintiff, to determine whether there are similar factors surrounding the assault and rape of the plaintiff by Belin which support a finding of reasonable foreseeability of “violence towards [the plaintiff].” Westerback, 50 Mass.App.Ct. at 145 (emphasis added), quoting Gidwani, 373 Mass. at 166.
Bjorgolfsson contends that the following factors support her argument that the assault and rape were reasonably foreseeable: (1) she was extremely intoxicated, which could have led to her asphyxiating on her own vomit; (2) she was wheeled into the hotel on a luggage cart, off of which she could have fallen and injured herself; (3) she was treated by Nine Zero so poorly that Beantown Pub was on actual notice that she was not safe; (4) Nine Zero’s physical proximity to, and informal relationship with, Beantown Pub; and (5) the temporal proximity between the rape and the time when Bjorgolfsson left Beantown Pub.
Cases holding that “a defendant, as a matter of law, is not bound to anticipate the intervening acts of third parties have been largely confined to their facts.” Poskus, 423 Mass, at 639, quoting Mullins, 389 Mass, at 63 n.20. In the present case, there are no facts in the summary judgment record to suggest that Beantown Pub could have reasonably foreseen a harm to the plaintiff, of the general character she suffered, even considering her heavily intoxicated state. For purposes of this motion, I assume that Beantown Pub knew or should have known that the plaintiffs intoxicated state put her in danger of asphyxiation on her own vomit. Furthermore, I assume that Nine Zero’s treatment of the plaintiff, by wheeling her into the hotel on a luggage cart, put her in danger of falling and injuring herself. Nevertheless, such injuries are hardly “of the same general character” as the assault and rape by Belin. In Re Sponatski, 220 Mass. 526, 530-31 (1915); Hill v. Winsor, 118 Mass. 251, 259 (1875).
Nor does the summary judgment record reflect that Beantown Pub had reason to believe that the Nine Zero employees who were with the plaintiff posed a physical threat to her. Although, as the plaintiff argues, Beantown Pub’s contention that Nine Zero was “upscale” does not help its case, there is still nothing in the record to suggest that Bean-town Pub was on notice that Nine Zero employed dangerous individuals, was unsafe or not secure, or
was known for any sort of violent or criminal activity. The Nine Zero employee that told the plaintiff, “Let me seeyour face, look up, you are beautiful,” did so as the plaintiff was on her way to the hotel room and not in front of any Beantown Pub employee. Unlike Christopher, where the employee of the defendant tavern was “on notice that antagonism between two groups that began in the tavern had festered to the point of violence,” no one from Beantown Pub had any reason to believe that Belin or any other Nine Zero employee intended to be violent towards the plaintiff or harm her in any way. Christopher, 57 Mass.App.Ct. at 225-26. Cf. Flood, 416 Mass. at 72-72.
In addition, while Beantown Pub is located across the street from the Nine Zero and the rape took place shortly after the plaintiff left the tavern, the undisputed fact remains that the rape took place off premises and after the plaintiff had left Beantown Pub for the evening. Thus, the spatial and temporal proximity of the rape to the location of Beantown Pub and the time between when the tavern breached its dufy to the plaintiff and when Belin raped the plaintiff, does not increase the reasonable foreseeability of the plaintiff s injuries.
Beantown Pub breached its duty to the plaintiff first by serving her alcohol after she was visibly intoxicated and then by failing to call the police or waiting for 911 to arrive so that she could be placed in protective custody or taken to the emergency room. However, “[t]here must be limits to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment.” Poskus, 423 Mass, at 640. There is nothing in the record to suggest that the assault and rape of the plaintiff was reasonably foreseeable to Beantown Pub. Therefore, based on the summary judgment record, Beantown Pub’s motion for summary judgment must be ALLOWED.
ORDER
For all of the foregoing reasons, it is therefore ORDERED that Beantown Pub’s motion for summary judgment on Count I (Negligence and Respondeat Superior) is ALLOWED.

The plaintiff contends that Daley suggested she stay the night at a hotel, rather than wait for 911 to respond, to protect Beantown Pub’s liquor license after the bar allegedly served the plaintiff while she was visibly intoxicated.

Although the record offers conflicting evidence of whether Belin was alone when he wheeled the plaintiff to the guestroom, for purposes of this motion, viewed in the light most favorable to the plaintiff as the non-moving party, the court assumes that Belin was unaccompanied by another Nine Zero employee from the time he left the lobby with the plaintiff until, as described more fully below, Shindo arrived to find the plaintiff alone with Belin in the guestroom.